**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael A. STROZIER, also known
as M. Kirt Strozier, Defendant–
Appellant.**

**No. 91–3829.**

United States Court of Appeals,
Seventh Circuit.

Argued May 19, 1992.

Decided December 4, 1992.

Mark L. Rotert, Sean B. Martin, Asst. U.S. Attys., Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Eddie A. Stephens (argued), Office of the U.S. Atty., Chicago, IL, for plaintiff-appellee.

Stanley L. Hill, Christopher W. Graul (argued), Hill & Associates, Chicago, IL, for defendant-appellant.

Before CUMMINGS and COFFEY, Circuit Judges, and GIBSON, Senior Circuit Judge.[*]

COFFEY, Circuit Judge.

■ The defendant Michael Angelo Strozier was indicted on one count of mail fraud in violation of 18 U.S.C. § 1341, two

---

[*] The Honorable Floyd R. Gibson, of the Eighth Circuit, is sitting by designation.

counts of credit card fraud in violation of 18 U.S.C. § 1029(a)(2), and one count of using a false social security number in violation of 42 U.S.C. § 408(a)(7)(B). Pursuant to a plea agreement with the Government, Strozier pled guilty to the mail fraud count, and, in return, the other three counts were dismissed. The district court sentenced Strozier to 24 months imprisonment under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). The defendant appeals his sentence, arguing that it "was imposed as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a)(2).[1] We affirm.

I.

A. Defendant's Criminal Conduct

In his plea agreement with the Government, Strozier acknowledged that in mid-February, 1990, he used two personal checks to open a cash management account in the Chicago offices of Fidelity USA, an investment house headquartered in Boston, Massachusetts. One check, drawn on the Gainer Bank of Hammond, Indiana, was for $5,000 and the other, drawn on the Royal Bank of Canada in Toronto, Canada, was for $40,000. Strozier knew when he deposited the two checks that neither was supported with sufficient funds. While at the Fidelity offices, Strozier also made an application to open a checking account at Shawmut Bank of Boston. Shawmut is a Fidelity affiliate and allows Fidelity customers to draw funds from their cash management accounts through Shawmut checking accounts. The defendant also ordered printed bank checks for use in connection with his Shawmut checking account.

After opening these two accounts, Strozier traveled to Las Vegas, Nevada, and checked into the Golden Nugget Hotel and Casino. During his three-day stay at the Golden Nugget, the defendant negotiated and cashed three casino checks totaling $12,000 to be drawn against his Fidelity cash management account. Strozier then returned to the Chicago Fidelity offices where he deposited a $160,000 check, again drawn on the Royal Bank of Canada, in his cash management account. The defendant knew this check would bounce as well. On March 1, 1990, Fidelity issued a monthly statement for the defendant's account which reflected a positive balance of $205,-000. The statement, which the defendant admits was in furtherance of his scheme to defraud, was sent through the U.S. mails.

Late in February, 1990, Strozier received the printed Shawmut bank checks he ordered when he opened his Fidelity account. From March 2 to March 8, the defendant issued and negotiated twelve of the Shawmut checks, receiving in return $24,000 worth of goods and services. On March 6, 1990, Strozier presented a third Royal Bank of Canada check, this one for $200,-000, at Fidelity. He used this check to open a corporate cash management account in the name of "Leverage International." Strozier was also aware that this check was not covered by sufficient funds.

All in all, Strozier admitted that he fraudulently deposited $405,000 in his two Fidelity accounts by means of what he knew to be worthless checks, and wrote $36,000 in checks to be drawn against these accounts before his scam was brought to a halt by his arrest in San Francisco on March 19, 1990. Strozier also acknowledged that this misconduct occurred while he was under a post-conviction release order issued by an Ohio federal court for bank fraud in violation of 18 U.S.C. § 1344. Strozier was scheduled to report to a federal correctional institution on March 27, 1990, in connection with this conviction, for

---

1. The defendant also argues that the district court "failed to state in open court the reasons for its imposition of the particular sentence" as required by 18 U.S.C. § 3553(c). The defendant failed to present this objection to the district court, and therefore waived the argument on appeal. *United States v. Caicedo*, 937 F.2d 1227, 1236 (7th Cir.1991). In any event, the argument is a loser. Section 3553(c) is satisfied "when a district court indicates the applicable Guidelines range, and how it was chosen." *United States v. Morrison*, 946 F.2d 484, 504 (7th Cir.1991) (quoting *United States v. Georgiadis*, 933 F.2d 1219, 1223 (3d Cir.1991)). The district court met this standard in explaining at the sentencing hearing how it arrived at Strozier's punishment.

which he had received a term of seven months imprisonment.

Pursuant to U.S.S.G. § 1B1.2(c),[2] the defendant also stipulated in the plea agreement he entered into with the Government that he engaged in other fraudulent conduct in which he falsified his name and his social security number in order to obtain credit cards and charge accounts. The defendant acknowledged that through these schemes, which formed the factual basis of the three dismissed counts of the indictment, he defrauded victims of roughly $63,-000.

### B. Sentencing Calculations

At the sentencing hearing, the district court adopted the sentencing calculations recommended by the probation department in its presentence report. The applicable guideline for the defendant's mail fraud offense is § 2F1.1(a), which provides for a base offense level of six. Nine levels were added to the defendant's base offense level because his offense involved a "loss" between $350,000 and $500,000. § 2F1.1(b)(1)(J). This loss amount was calculated by adding the bogus checks totaling $405,000 which the defendant fraudulently deposited in his Fidelity accounts to the roughly $63,000 in losses he inflicted by way of his other relevant conduct, *see* U.S.S.G. § 1B1.2(c), which involved falsifying his name and social security number in order to obtain credit cards and charge accounts. Another two levels were added to the defendant's base offense level for "more than minimal planning," § 2F1.1(b)(2)(A), but this increase was cancelled out by a two level reduction for the defendant's acceptance of responsibility for his crime, § 3E1.1(a). Strozier's adjusted offense level was thus 15, and with his

criminal history category of II, the applicable Guidelines sentencing range was 21–27 months. The district court imposed a sentence of 24 months imprisonment.[3]

### II.

The district court's determination of the amount of loss involved in the defendant's offense under § 2F1.1(b)(1) is a finding of fact which we review for clear error only. *United States v. Haddon*, 927 F.2d 942, 952 (7th Cir.1991). However, the meaning of "loss" in § 2F1.1(b)(1) is "a legal question on which our review is plenary." *United States v. Mount*, 966 F.2d 262, 265 (7th Cir.1992).

Strozier argues on appeal, as he did at his sentencing hearing, that the district court incorrectly calculated his offense level, and contends that the appropriate adjusted offense level is not 15, but 12, a reduction which would make the applicable Guidelines sentencing range 12–18 months.[4] Strozier offers two different rationales in arriving at an offense level calculation of 12. In his first argument he contends that the district court erred in determining the appropriate amount of loss attributable to his fraud under § 2F1.1(b)(1). Strozier maintains that only losses he inflicted in connection with his § 1B1.2(c) relevant conduct ($63,000) and the amount of funds he *withdrew* from his fraudulent Fidelity accounts ($36,000) can properly be considered in his sentencing. The remaining $359,000 which he fraudulently deposited, but never withdrew, from his Fidelity accounts should not, he insists, be considered part of the loss under § 2F1.1(b)(1). Under the defendant's proposed calculations, the loss would be placed at roughly $99,000, increasing his base offense level by only 6, rather than by 9 as

---

**2.** Under § 1B1.2(c), a "conviction by a plea of guilty … containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)."

**3.** This sentence was in addition to the seven months the defendant had already served for his separate conviction (noted above) in an Ohio federal court on bank fraud charges.

**4.** In his plea agreement with the Government, Strozier agreed that "[a]t the time of sentencing, each side shall be free to urge the sentence they deem appropriate within the Sentencing Guidelines, based on all the facts and circumstances in this case and on the facts and information reflected by the Probation Officer's presentence investigative reports."

the district court calculated. § 2F1.1(b)(1)(G).

The district court, in rejecting the defendant's "loss" argument, relied on the Guidelines commentary to § 2F1.1 which provides that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1, comment. (n.7).[5] Our case law supports the district court's determination. In *United States v. Schneider*, 930 F.2d 555, 556 (7th Cir.1991), we made clear that when determining a Guidelines sentence "[i]n the case of fraud, the loss need not be actual; it is enough if it is probable or intended."[6] We explained that "'loss' within the meaning of the Guidelines includes intended, probable, or otherwise expected loss, a qualification of vital importance in a case such as this where the fraud is discovered or otherwise interrupted before the victim has been fleeced." *Id.* at 558. In this connection, we noted that it is "fraud to impose an enormous risk on one's [victim] through deliberate misrepresentation even when the risk does not materialize." *Id.*

Strozier's activities in connection with his Fidelity accounts leave no doubt that the "intended, probable, or otherwise expected loss" he created was for the full $405,000 he fraudulently deposited. Strozier opened an account with rubber checks purportedly worth $45,000, flew to Las Vegas where he withdrew $12,000 of those funds, and then returned to Chicago to make another fraudulent deposit, this one for $160,000. The defendant next spent $24,000 from the account using the printed checks he had or-

dered for that purpose, and opened a second account, this time with a fraudulent $200,000 check. It is true that Strozier had only spent $36,000 of the Fidelity account funds by the time he was arrested on March 19, 1990, but that was barely one month after he had set his scam into motion. The district court could reasonably infer that the defendant intended to withdraw more than $36,000 from his accounts, and would have had he not been apprehended. Only his arrest prevented Strozier from spending the rest of the fraudulently deposited funds. If that was not his plan, why deposit such large amounts? Why order printed checks to draw against the account? Why increase the fraudulent deposit amounts with every visit to the Fidelity offices, from $45,000, to $160,000, to $200,000? Why open a second account on behalf of a corporation with the last and largest deposit? These questions point to an obvious answer: because the defendant had every intention of spending the $405,000 he "deposited" in the Fidelity accounts, just as one would expect from one who goes to the trouble of engineering and implementing a scam of this nature. Law enforcement authorities interrupted his scheme and thus prevented him from withdrawing more of the funds from the accounts.

At oral argument, defendant's counsel was asked what other motivation could explain the defendant's actions. Counsel responded that he believed the defendant "had a grandiose view of himself and wanted large numbers in those accounts," but never actually intended to spend more than the $36,000 he withdrew. We, like the

---

5. The Guidelines commentary is an authoritative interpretive aid which explains how a specific guideline section "is to be applied. Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal. *See* 18 U.S.C. § 3742." U.S.S.G. § 1B1.7; *see also United States v. DeCicco*, 899 F.2d 1531, 1537 (7th Cir.1990).

6. In *Mount*, we stated that the Guidelines "loss" inquiry requires us "to determine the net detriment to the victim rather than the gross amount of money that changes hands." 966 F.2d at 265. The "net detriment to the victim" language is

not in conflict with the directive in the commentary to § 2F1.1 to consider a criminal's "intended" loss when it is greater than the "actual" loss he inflicted. *Mount* used the "net detriment to the victim" formulation only to explain the appropriate "loss" analysis when a defendant has transferred some value to his victim, "[s]o a fraud that consists in promising 20 ounces of gold but delivering only 10 produces as loss the value of 10 ounces of gold, not 20." *Id. Mount's* citation to *Schneider* in its discussion of loss calculations under § 2F1.1 demonstrates that it is in harmony with the approach presented in the instant opinion.

district court, are of the opinion that the defendant wanted "large numbers" in the accounts so he could spend them. No evidence presented at the sentencing hearing supported counsel's appraisal of his client's motivations, and we refuse to overturn the district court's sentence on the basis of speculation in the valley of dreams. The undisputed evidence established that Strozier placed Fidelity at "enormous risk" of losing $405,000, and all his actions point to the conclusion that that risk would have materialized had the defendant not been arrested. *Schneider*, 930 F.2d at 558. The district court properly included the entire amount the defendant fraudulently deposited in the Fidelity accounts in the § 2F1.1(b)(1) loss calculation.

■ The defendant offers a second route by which to arrive at an adjusted offense level of 12, but this argument is also without merit. Strozier argues that even if we conclude that the district court properly calculated the loss attributable to his fraud, he was guilty of only a "partially completed offense", U.S.S.G. § 2B1.1, comment. (n.2), in that he withdrew only $36,000 of the $405,000 he deposited, and thus qualified for a 3 level reduction under § 2X1.1(b)(1) because he was guilty of only *attempting* to defraud Fidelity of the full $405,000. The district court rejected this argument by observing that "this is not a case of an attempt ... This is a plea of guilty to a scheme to defraud...."

Initially, we note that the defendant's plea of guilty to the substantive, completed offense of fraud is powerful evidence that he merited no reduction for the allegedly uncompleted nature of his scheme. *United States v. Strickland*, 935 F.2d 822, 832 (7th Cir.), *cert. denied sub nom., Moore v. United States*, — U.S. —, 112 S.Ct. 324, 116 L.Ed.2d 265 (1991). Despite his guilty plea, Strozier asserts that § 2X1.1(b)(1) reduction for attempt applies to his offense. The first step in his argument is to observe that the commentary to § 2F1.1, which unquestionably governs his fraud offense, states that "[v]aluation of loss is discussed in the Commentary to § 2B1.1 (Larceny, Embezzlement, and Other Forms of

Theft)." U.S.S.G. § 2F1.1, comment. (n.7). The commentary to § 2B1.1, in turn, provides that

"[i]n the case of a partially completed offense (*e.g.*, an offense involving a completed theft that is part of a larger, attempted theft), the offense level is to be determined in accordance with the provisions of § 2X1.1 (Attempt, Solicitation, or Conspiracy) whether the conviction is for the substantive offense, the inchoate offense (attempt, solicitation, or conspiracy), or both; *see* Application Note 4 in the Commentary to § 2X1.1."

U.S.S.G. § 2B1.1, comment. (n.2). The defendant believes the "partially completed offense" language covers his case, and requires that the three-level attempt reduction of § 2X1.1(b)(1) apply to him.

There are several defects in this reasoning. The first, and most significant, is that the commentary to § 2F1.1, which the defendant admits governs his offense, itself provides, as we stated above, that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1, comment. (n.7). The § 2F1.1 commentary thus anticipates precisely the sort of situation presented in the instant case: a defendant who clearly intended to inflict a loss on his victim much greater than the "actual" loss time and circumstances (i.e., his arrest) permitted him to exact. In those situations, the Guidelines make clear that the defendant should be held accountable for the full amount of the loss he was prepared to inflict.

Moreover, even if we were to accept the defendant's self-serving and fallacious interpretation of the Guidelines that in his case § 2F1.1 requires us to consider his sentence under § 2B1.1, comment. (n.2), we would still reject his contention that he is entitled to a three-level reduction. The language to which the defendant directs us in the commentary to § 2B1.1, provides that "[i]n the case of a partially completed offense (*e.g.*, an offense involving a completed theft that is part of larger, attempted theft), the offense is to be determined in

accordance with the provisions of § 2X1.1...." In our view, the defendant did not "partially" complete his offense, nor was the fraud to which he pled guilty part of a "larger, attempted fraud." The defendant completed his defrauding of Fidelity when he set up the two fraudulent accounts; what he did not get around to completing was inflicting on Fidelity *all* the loss his actions clearly indicate he planned. Thus, even putting to one side § 2F1.1, comment. (n.7) (which we believe is determinative here), the defendant still would not qualify for consideration for a three-level attempt reduction under § 2X1.1(b)(1) because he would not get past the limiting language in the commentary to § 2B1.1.

Finally, even if considered under the terms of § 2X1.1(b)(1), the defendant's request for a three-level reduction would fall on deaf ears. Under that provision, a three-level decrease is authorized if the defendant was guilty of an attempt, "unless the defendant completed all the acts the defendant believed necessary for the successful completion of the offense *or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.*" U.S.S.G. § 2X1.1(b)(1) (emphasis added). This second exception snares the defendant. As we said in *Schneider*, "[m]any fraudulent schemes are interrupted before they reach fruition. From a practical standpoint they are attempts, and their gravity depends in significant degree on the size of the loss that would have been inflicted had the scheme not been interrupted." 930 F.2d at 556. As we said above, "circumstances demonstrate" that but for the "interruption" caused by his arrest, Strozier would have spent the funds he fraudulently deposited, and is thus not entitled to a three-level attempt reduction. This analysis under § 2X1.1(b)(1) echoes our inquiry under § 2F1.1, comment. (n.7), in that it calls for determining the amount of the loss *intend-*

ed by the defendant. The framers of the Guidelines noted this similarity themselves: the critical language concerning the defendant's "intended loss" in the § 2F1.1 commentary is preceded by the words, "[c]onsistent with the provisions of § 2X1.1 (Attempt, Solicitation or Conspiracy)...." And so the defendant's arguments have brought us full circle. Any way Strozier turns, the Guidelines support the sentence imposed by the district court. We AFFIRM.