UNITED STATES of America,
Plaintiff–Appellee,

v.

Gregory BERNA, Defendant–Appellant.

No. 92–4053.

United States Court of Appeals,
Seventh Circuit.

Argued May 10, 1993.

Decided June 7, 1993.

Timothy O'Shea, Madison, WI (argued), for plaintiff-appellee.

Steven C. Underwood, Michael S. Heffernan (argued), Stolper, Koritzinsky, Brewster & Neider, Madison, WI, for defendant-appellant.

Before POSNER and FLAUM, Circuit Judges, and WILL, Senior District Judge.*

WILL, Senior District Judge.

Gregory Berna pled guilty to one count of wire fraud and 28 other counts were dismissed. He was sentenced to 37 months for embezzling over $1 million. He appeals his sentence under 18 U.S.C. § 3742, claiming incorrect application of the sentencing guidelines. Berna argues that a two level reduction should have been granted under

* The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

§ 3B1.2(b) because he was a minor participant and that the amount he was responsible for embezzling was only $374,085 (falling under § 2F1.1(b)(1)(J)), not $1 million (§ 2F1.1(b)(1)(L)), and he should therefore be sentenced at a lower offense level.

Berna was employed by Roehl Trucking Co. and admitted to using their money wiring system (called "comcheks") to transfer money to people outside the company with whom he was ostensibly in partnership. Berna thought the two outsiders were legitimate businessmen, that the money he invested with them would bring a huge return, and that he would then repay the money he had taken from Roehl. (He also invested money from his personal savings.)

In fact, the two outsiders were con men and the money was never recovered, let alone returned with a profit. He went to Everett Roehl, president of the company, in February 1991 and admitted to transferring at least $250,000 of company money. Roehl told him that was embezzling. One of the con men was with Berna, and he told Roehl the same story that had hooked Berna about the great investment opportunity. Roehl did not fire Berna or report him right away, because he too hoped that the investment was legitimate and he would get his money back plus $6 million, plus a multi-million dollar loan at a favorable interest rate.

After confessing to Roehl, Berna continued to use the comchek system. Each time Roehl found out, Berna apologized and said that they had to make a slightly larger investment before the payoff would come, but that he would not do it anymore. He then proceeded to do it again. In April, Roehl told him that he could use the transfer system if he first paid Roehl for the amount of money he wanted to transfer. Berna gave him $31,000, but transferred more than that. Finally, it became clear that the money was not going to be repaid and Roehl turned Berna in.

■ Under Guideline § 3B1.2(b) a reduction can be granted for minor participation if the defendant is less culpable than most other participants. Judge Crabb held that, although the two other defendants had prior records and conned Berna, he was integral to the crime. Even though he intended to repay Roehl, he intentionally took money from Roehl. Berna was the only one who had access to Roehl's comchek system and the authority to use it. He was the only one who actually stole money, although the other two defendants worked to placate Roehl afterwards to keep him from blowing the whistle on their scheme.

We review the district court's decision for clear error, *United States v. Cea*, 963 F.2d 1027, 1032 (7th Cir.1992). Berna argues that the other two men were very bad people, while he has no prior record and in fact lost his own money in this crime, not just Roehl's money. As Judge Crabb pointed out, this may show that the other two men are worse people, but it does not show that Berna was less responsible for, or only a minor participant in, the crime that is charged here—which is wire fraud for taking money from his employer, not investment fraud for the scheme the money was "invested" in.

We made clear in *Cea* that although the guidelines refer to "culpability," this does not require some abstract assessment of character, but an examination of what actions the defendant took:

> Cea's argument that the district court erred by examining his activities rather than his culpability cuts things too finely. A court cannot determine a defendant's culpability by referring to some abstract metaphysical standard; it must look to the defendant's activities and the role he played in the conspiracy.

*Cea*, 963 F.2d at 1032. The district court performed a similar analysis in this case, and the decision is not clearly erroneous.

■ Berna next argues that he thought he had Roehl's permission to continue transferring money to his partners through the comchek system after February 1991, and so those transfers cannot be included in the amount of loss he is responsible for because he had no intent to defraud with respect to those transfers. The district court found that he did not have Roehl's permission and he was responsible for illegally transferring those funds. This finding is also reviewed

for clear error. *United States v. Strozier*, 981 F.2d 281, 283 (7th Cir.1992).

Roehl denied that he gave Berna permission, except for the $31,000 pre-paid transfer. He testified that he explicitly told Berna not to use the system on more than one occasion, and Berna kept promising not to do it any more. Finally, Roehl had Berna taken off the authorized list in April, although this did not stop him because he had copied codes that allowed him to continue using the system. Berna's total embezzlement of Roehl funds exceeded $1 million dollars as Judge Crabb found.

Berna argues that he thought he had permission, particularly since Roehl knew of and did not stop the transfers. The only evidence Berna presents which supports his belief he had permission came in July, long after almost all the transfers. Roehl repeatedly told him to stop making transfers. Although perhaps Roehl could have tried sooner or more forcefully to stop Berna from making the transfers, Berna is no less responsible for the theft simply because Roehl made it easier.

Finally, Berna presents a document that Roehl signed in July, after he was told that the money was all coming through within a couple of days, but that he had to sign some papers first. The contract he signed to get the $6 million cash and the $20 million loan included a statement that he "agree[d] that any transfers of cash in advance of the closing papers is acceptable to me on those terms with T.B.O. Holding Company...." This document, signed in July, cannot prove that Roehl gave Berna permission from February through July to transfer money. When Berna made the transfers they were unauthorized and unlawful. The fact that Roehl was so desperate to get something out of this mess and so naive he signed a statement in July agreeing to possible future and all past transfers does not make the earlier illegal transfers legal. Judge Crabb's finding is not clearly erroneous. The sentence was proper under the guidelines, and we affirm.