96 F.3d 1450
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Martez JACKSON, and Kelvin B. Smith, Defendants-Appellants.
 No. 95-3884, 95-4025.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 6, 1996.
Decided Aug. 27, 1996.
 
 Before BAUER, MANION and DIANE P. WOOD, Circuit Judges.
 
 Order
 
 1
 Martez Jackson and Kelvin Smith twice robbed the Lakeside Bank--once in November 1994 and again a month later. They were aided by Eugene Nelson--an employee at Lakeside Bank who provided them with inside information--and two or three other men who assisted them with the actual robberies. At each robbery, Jackson was armed with a firearm, and Smith carried a BB gun that appeared to be a real firearm. The FBI caught Jackson, Smith and Nelson. Smith and Jackson both pleaded guilty to two counts of bank robbery, 18 U.S.C. § 2113(a), and one count of use of a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c). Smith and Jackson both filed timely notices of appeal and this court consolidated their cases for briefing and disposition. Smith claims the district court wrongly denied him a reduction in his sentence for being only a minor participant in the two robberies, and Jackson contends that the district court erroneously denied his request to withdraw his guilty plea. We affirm Smith's sentence and the denial of Jackson's request.
 
 I. Smith's Appeal
 
 2
 At sentencing, Smith had a Combined Adjusted Offense Level of 30 for the two bank robbery counts.[1] Smith received a 3 point reduction for acceptance of responsibility. U.S.S.G. § 3E1.1(a), (b). With a Total Offense Level of 27 and a Criminal History Category of I, Smith faced a Guidelines range of 70-87 months' imprisonment on the bank robbery counts. Because Smith provided substantial assistance to the government, the prosecution moved for a downward departure below the Guidelines range. U.S.S.G. § 5K1.1. Accordingly, the district court sentenced Smith to 26 months' imprisonment for the two bank robbery counts, to be followed by a 60-month consecutive term for the firearm count.
 
 
 3
 At his sentencing, Smith contended that he should receive a further 2 level decrease in his offense level pursuant to U.S.S.G. § 3B1.2(b) because he was only a minor participant in the two robberies. The district court overruled this objection, and Smith now raises this claim on appeal. The district court's holding that Smith was not entitled to a 2 level reduction under § 3B1.2(b) is a factual determination that we review only for clear error. United States v. Windom, 82 F.3d 742, 747 (7th Cir.1996).
 
 
 4
 Smith argues that he is less culpable than Jackson and Nelson--and therefore entitled to the 2 level decrease--because he (Smith) did not participate in planning the robberies, in dividing the proceeds of the robberies, because he received only $5,000 out of the $31,690 stolen, because he carried only a BB gun (as opposed to a real firearm), and because Jackson was clearly the leader of the robberies. None of these factors--individually or collectively--entitle Smith to a reduction for being only a minor participant.
 
 
 5
 Smith's argument is based on the premise that so long as he can point to another participant in the robberies who was more morally culpable than he, he is--ipso facto--less culpable, and therefore entitled to the reduction under § 3B1.2. This court has consistently held to the contrary, however. See, for example, United States v. Strang, 80 F.3d 1214, 1218 (7th Cir.1996); United States v. Smith, 80 F.3d 215, 222 (7th Cir.1996); United States v. Nobles, 69 F.3d 172, 190 (7th Cir.1995); United States v. Berna, 995 F.2d 711, 712 (7th Cir.1993). Rather, this court has held that when a defendant is sentenced only for the criminal conduct in which he directly engaged, he is not entitled to a reduction under § 3B1.2 for being a minor or minimal participant. See, for example, United States v. Uriostegui-Estrada, 86 F.3d 87, 90 (7th Cir.1996); United States v. Burnett, 66 F.3d 137, 140 (7th Cir.1995).
 
 
 6
 Given that Smith was sentenced only for the conduct in which directly engaged--two armed bank robberies--the factors that he claims entitle him to a reduction under § 3B1.2 are irrelevant. It does not matter that Jackson was the primary organizer, leader, or "driving force" behind the robberies, United States v. Bolin, 35 F.3d 306, 310 (7th Cir.1994), or that he (Smith) received only a small portion of the booty. United States v. Moore, 991 F.2d 409, 414 (7th Cir.1993).
 
 
 7
 Finally, Smith argues that his sentence is unjust because 60 months of his 86-month term of imprisonment are for Jackson's possession of a firearm, and his offense levels for the remaining two counts were increased only because Jackson possessed a firearm and disarmed the bank guard. But Smith acknowledges that his sentence is not illegal, and thus, even if his sentence were "unjust," that would not be a basis on which we could hold that the district court's factual determination as to his role in the bank robberies was "clearly erroneous." Because the district court's factual determination is not "clearly erroneous," we cannot reverse the district court's ruling that the reduction under § 3B1.2 is inapplicable to Smith.
 
 II. Jackson's Appeal
 
 8
 Jackson frames his issue on appeal as whether the district court erroneously denied him permission to withdraw his guilty plea. Under Rule 32(e) of the Federal Rules of Criminal Procedure, the district court may permit the defendant to withdraw a guilty plea prior to sentencing for "any fair and just reason."
 
 
 9
 In his plea agreement, Jackson "agree[d] he [would] fully and truthfully cooperate with the government" and that he would "provide complete and truthful information in any investigation and pre-trial preparation." In exchange, the government promised that it would make a § 5K1.1 motion for downward departure below the applicable Guidelines range at Jackson's sentencing.
 
 
 10
 Prior to sentencing, however, the government moved to vacate Jackson's plea agreement, claiming that Jackson had given inconsistent statements as to the source of the gun he carried during the bank robberies--at times he claimed he had gotten the gun from someone named Antonio Bass, at other times he claimed that Eugene Nelson had provided the gun, and at still other times, he claimed to have gotten the gun from someone named Eugene Banks. Moreover, Jackson twice refused to be transported from his jail to the federal building to appear at proffers to clarify his varying statements.
 
 
 11
 Based on Jackson's refusal to appear at two scheduled proffers and his inconsistent statements concerning the source of the gun, the government contended that Jackson had failed to cooperate fully and truthfully, and thus, Jackson had breached his plea agreement. Accordingly, the government sought the court's permission to vacate the existing plea agreement, and instead to enter into a new plea agreement that did not include the government's promise to make a § 5K1.1 motion. Jackson then filed a response in which he agreed with the government's motion, requesting that his plea agreement be withdrawn and his case set for trial.
 
 
 12
 The district court denied the motion to vacate Jackson's plea agreement, noting that the government did not have the right to compel Jackson to enter into a new plea agreement,[2] and that the correct remedy for Jackson's failure to cooperate with the government was simply for the government to decline to file the § 5K1.1 motion (as it was permitted to under the plea agreement). Without the § 5K1.1 motion, Jackson faced a Guidelines range of 87-108 months' imprisonment on the two bank robbery counts. The court sentenced Jackson to 87 months' imprisonment on the bank robbery counts, to be followed by a consecutive term of 60 months' imprisonment on the firearm count.
 
 
 13
 On appeal, Jackson maintains that the district court erred by denying him permission to withdraw his guilty plea. The thrust of Jackson's argument is that he did not materially breach his plea agreement, that the government's refusal to file a § 5K1.1 motion therefore breached its obligation under the plea agreement, and that accordingly, the district court should have permitted Jackson to vacate his plea agreement.
 
 
 14
 Notwithstanding Jackson's framing of the issue on appeal, the only question for this court to decide is whether Jackson's inconsistent statements concerning the source of the gun and his refusal to attend two proffers constituted only an immaterial breach of his plea agreement. (Jackson does not appear to claim that these actions did not breach the plea agreement at all.) If Jackson's actions constituted a material breach of his plea agreement, the district court was well within its discretion to deny Jackson permission to withdraw his guilty plea. United States v. Winston, 34 F.3d 574, 580 (7th Cir.1994) (If defendant breaches plea agreement, he must "abide with the consequences."). On the other hand, if this court were to find that Jackson did not materially breach his plea agreement, the government would have had no justification for denying Jackson a § 5K1.1 motion, and it would have been an abuse of discretion for the district court to deny Jackson's motion to withdraw his guilty plea. United States v. Burrell, 963 F.2d 976, 985 (7th Cir.1992), cert. denied, 506 U.S. 928 (1992). We review de novo the district court's determination that Jackson's breach was material. United States v. Clark, 55 F.3d 9, 11 (1st Cir.1995).
 
 
 15
 Jackson seems to take the position that so long as the government truthfully got most of the information it wanted from him, any small lies he told were not material. In fact, his plea agreement unambiguously called for Jackson to cooperate "fully and truthfully." The government's obligation to file a § 5K1.1 motion was similarly predicated upon Jackson's full and truthful cooperation. Jackson's prevarications called into question everything else he had told prosecutors and diminished his value as a witness by making him subject to impeachment. As a result, the government substantially lost the benefit of its bargain. Thus, Jackson's breach of his plea agreement was material.
 
 
 16
 Because Jackson breached his plea agreement, the government no longer was obligated to file the § 5K1.1 motion, and the district court was well within its discretion to deny Jackson permission to withdraw his guilty plea.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 The firearm count carried a statutory minimum consecutive sentence of 60 months' imprisonment, 18 U.S.C. § 924(c); U.S.S.G. § 2K2.4(a), and hence, was not included in the Combined Adjusted Offense Level
 
 
 [2]
 Nor, for that matter, does Rule 32(e) authorize the government to make a motion to vacate a guilty plea. United States v. Ritsema, No. 95-1304, Slip op. at 15 (7th Cir. July 11, 1996)