**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daniel Ray WALKER, Defendant–**
**Appellant.**

**No. 01–1105.**

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 19, 2001.*

Decided Nov. 19, 2001.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Federal Rule of Appellate Procedure 34(a)(2).

Before BAUER, EASTERBROOK, and EVANS, Circuit Judges.

## ORDER

In March 1998 Daniel Ray Walker used false identification and a false social security number to open an account at the First Midwest Bank in Bolingbrook, Illinois. Walker, who was on parole from a state forgery conviction, deposited fraudulent checks totaling $9,506 into the account and withdrew $4,523. In June 1998 Walker used false identification and a false social security number to open another account with the same branch. Walker deposited fraudulent checks totaling $9,254 into this second account and withdrew $7,238 by cashing checks at a First Midwest branch in Danville, Illinois. In November 1998 Walker used false identification and a false social security number to open an account at the First Midwest branch in Champaign, Illinois. Walker deposited fraudulent checks totaling $3,221 into this account, but police arrested him after he tried to withdraw $842.

On April 7, 1999, a federal grand jury returned a one-count indictment charging

Walker with bank fraud in violation of 18 U.S.C. § 1344. Two weeks later, prior to a bond hearing, Walker provided information, including his social security number, to a pretrial services officer who was running a check on his criminal history. On June 14, 1999, Walker, represented by counsel, pleaded guilty pursuant to a written plea agreement. As part of the deal, the government agreed "based upon the information currently available" that Walker should receive a three-level reduction in his offense level for acceptance of responsibility. The government also agreed not to seek an "upward departure from the sentencing guideline in this case." The plea agreement repeatedly noted that the district court would not be bound by the parties' stipulations in the agreement. After questioning Walker extensively at the plea hearing, the court accepted his plea and set the matter for sentencing.

In August 1999 the probation office discovered that Walker had provided a false social security number during his interview. Because of this deception, the presentence investigation report recommended a two-level upward adjustment for obstruction of justice, and also recommended that Walker not receive a three-level downward adjustment for acceptance of responsibility.

Meanwhile, although Walker was still represented by counsel, he had filed numerous pro se requests with the district court. Walker first requested access to a law library, which the court denied. Walker then filed objections to the PSR, labeled as an "addendum" to objections already filed by his attorney. In response the probation officer revised the PSR to address the concerns raised by counsel and Walker's pro se submission. After this revision, Walker moved to withdraw the objections contained in his pro se "addendum," which the court granted.

The government then responded to defense counsel's objections to the PSR. The government noted that, because Walker provided a false social security number, he should not receive a three-level downward adjustment for acceptance of responsibility, and should receive a two-level upward adjustment for obstruction of justice. On the day of the sentencing hearing, defense counsel filed an 18–page "Commentary on Sentencing Factors." At the hearing Walker personally requested a continuance to formulate additional objections to the PSR. The court granted his request, and also ordered the probation office to provide Walker with current copies of the sentencing guidelines manual and the rules of criminal procedure. In addition the court ordered that Walker be given a transcript of the June plea hearing.

In January 2000 Walker's counsel left the public defender's office, and the court appointed another assistant public defender, Andrew J. McGowan, to represent Walker. On January 20, Walker requested that his sentencing hearing again be continued; the court granted his request. On April 5, two days before the scheduled hearing, McGowan moved to withdraw as Walker's counsel. Although McGowan's motion referred without elaboration to a "conflict of interest," the record reveals that McGowan was concerned about Walker's excessive criticism of the previous assistant public defender's representation and his stream of pro se filings. One day later McGowan filed a 33–page "Supplemental Commentary on Sentencing Factors."

At the sentencing hearing the next day, McGowan informed the court that he no longer wished to withdraw from the case because the "conflict" had been resolved. McGowan, however, advised the court that even though he was still concerned that future problems could arise from his con-

tinued representation. In response the court sua sponte appointed Walker new counsel, a private attorney named Harvey Welch. The court then informed Walker that, if he desired, he could withdraw his guilty plea and "start with an entirely clean slate." The court made this offer because Walker had complained that the government had breached the plea agreement by opposing a downward adjustment for acceptance of responsibility. After meeting with Welch, however, Walker informed the court that he did not wish to withdraw his guilty plea. The court then continued the sentencing hearing, this time until June 9.

On June 1, Walker filed a motion asking the court to dismiss Welch as his counsel and allow Walker to proceed pro se. After admonishing Walker of the risks, the court granted his request. The court, however, denied Walker's second request for access to a law library, but did furnish him with an assortment of legal supplies, copies of documents from the case file, and various legal books.

On July 14, Walker filed a pro se motion to enforce the plea agreement, which included a request to have a portion of the indictment dismissed. During an August hearing on the motion, the court again gave Walker the opportunity to withdraw his guilty plea and again warned him of the perils of proceeding pro se. Walker iterated that he still wished to plead guilty and that he still wished to proceed without counsel. The court then denied his motion to enforce the plea agreement.

At an evidentiary hearing 11 days later, Walker again rejected an invitation from the district court to withdraw his guilty plea and complained that he had never asked the court to dismiss McGowan as defense counsel. Despite this complaint, Walker did not indicate to the court that he had changed his mind about proceeding

without the aid of counsel. Nevertheless the court reinstated McGowan as standby-counsel. At the sentencing hearing, McGowan cross-examined the probation officer at Walker's request.

The district court calculated Walker's adjusted offense level at 14 with a criminal history category of VI, yielding a sentencing range of 37–46 months. In calculating Walker's offense level, the court imposed a four-level upward adjustment under U.S.S.G. § 2F1.1 based on an intended loss of $21,981, the amount he deposited into the accounts. The court also imposed a two-level upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1, and agreed with the probation officer that Walker should not receive a three-level downward adjustment for acceptance under U.S.S.G. § 3E1.1. In determining Walker's criminal history, the court added two points under U.S.S.G. § 4A1.1(d) because Walker committed the offense while he was on parole. The court sentenced him to 46 months' incarceration.

On appeal Walker raises a host of issues. He first argues that the court violated his Sixth Amendment right to counsel. Specifically, Walker contends that his decision to proceed pro se was contingent upon him receiving access to a law library, that the court wrongfully denied his request, and that the court compounded the error by bringing McGowan back into the case despite a conflict of interest. Walker's argument is incorrect both legally and factually. The record reveals that Walker's decision to proceed pro se was unequivocal, and defendants who choose to forego appointed counsel and represent themselves are not entitled to library access in any event. *See United States v. Byrd,* 208 F.3d 592, 593 (7th Cir.2000). Walker knowingly gave up his Sixth Amendment right to the assistance of counsel, yet the court afforded him the

assistance of standby counsel after he gave up that right. If anything, the court gave Walker more representation than he was entitled. *See United States v. Oreye*, 263 F.3d 669, 672–73 (7th Cir.2001) (recognizing that "hybrid representation" does not violate Sixth Amendment because it gives defendants unjustified advantages). Moreover, Walker's failure to identify the nature of the purported conflict of interest or how he was harmed by McGowan's involvement are fatal to his claim. *See United States v. Pergler*, 233 F.3d 1005, 1009 (7th Cir.2000).

■ Walker next argues that the government breached the plea agreement by taking the position that Walker should not receive a three-level downward adjustment for acceptance of responsibility, and by arguing for a two-level upward adjustment for obstruction of justice. Contrary to Walker's assertion, however, the government did not breach the agreement. Although the government agreed that Walker's offense level should be reduced, that agreement was expressly conditioned "upon the information currently available." Two months after Walker pleaded guilty, the government learned that he had misled the probation office by giving a false social security number, a development which obviously undermined Walker's forthrightness in accepting responsibility for the crime. Moreover, Walker's claim that the government broke its promise to not seek an upward departure from the applicable sentencing range is frivolous; the government did not seek a departure.

■ In a related argument, Walker contends that the *court* erred by failing to adhere to the plea agreement. But by its own terms, the agreement left the court unfettered by any position taken by the government, a fact that the court pointed out to Walker throughout the proceedings. And as this court has repeatedly noted, a plea agreement is a contractual agreement between the government and a criminal defendant; the court is not a party to the contract. *United States v. Williams*, 184 F.3d 666, 671 (7th Cir.1999).

■ Walker also raises a number of challenges to his sentence. He first contends that the district court erred by imposing a four-level upward adjustment to reflect an intended loss of $21,981, the amount deposited. Instead, Walker believes he should be held accountable only for inflicting a loss of $11,761, the amount he actually withdrew. Section 2F1.1 of the guidelines, which at the time of this case governed offenses involving fraud or deceit,[1] establishes a base offense level of six and provides for increments depending on the amount of loss involved. *See United States v. Lorefice*, 192 F.3d 647, 654 (7th Cir.1999), *cert. denied*, 528 U.S. 1190, 120 S.Ct. 1246, 146 L.Ed.2d 104 (2000). Application Note 8 to § 2F1.1 addresses the methodology for calculating "loss" and states that if the loss the defendant intended to inflict can be determined, this figure will be used if it is greater than the actual loss. Though Walker withdrew only $11,761, he intended to steal $21,981, which is the appropriate measure of loss. *See United States v. Scott*, 250 F.3d 550, 552–53 (7th Cir.2001); *United States v. Strozier*, 981 F.2d 281, 285 (7th Cir.1992).

■ Walker counters that he is entitled to a three-level reduction in his offense level because his offense was "partially completed" under U.S.S.G. § 2X1.1. According to Walker, § 2X1.1 applies be-

---

1. Effective November 1, 2001, §§ 2F1.1 and 2F1.2 were deleted and consolidated with § 2B1.1. *See* U.S.S.G.App. C, amend. 617.

cause he was guilty only of a partially completed offense in that he did not obtain all of the money in the accounts. But Walker's argument is inconsistent with this court's precedent, which establishes that § 2X1.1 does not apply where the defendant has completed the elements of the offense. In *Strozier*, 981 F.2d 281, the defendant pleaded guilty to one count of mail fraud after depositing bogus checks totaling $405,000 into his bank account. Although the defendant withdrew only $36,000 from the account, the district court nevertheless calculated the attributable loss at $405,000 and declined to apply § 2X1.1. *Id.* at 282–85. In affirming the district court's decision, we first noted that "the defendant's plea of guilty to the substantive, completed offense of fraud is powerful evidence that he merited no reduction for the allegedly uncompleted nature of his scheme." *Id.* at 285. The *Strozier* court then concluded that the sentencing guidelines anticipate precisely the situation presented in the case: a defendant intending to inflict a greater loss on his victim than circumstances ultimately permitted him to carry out. *Strozier*, 981 F.2d at 285. "In those situations, the Guidelines make clear that the defendant should be held accountable for the full amount of loss he was prepared to inflict." *Id.* Moreover, the *Strozier* court concluded that the offense was not just *partially completed* because the defendant had "completed his defrauding" when he set up the two fraudulent accounts. *Id.* at 286. The same was true here. *See United States v. Strickland*, 935 F.2d 822, 832 (7th Cir.1991) (holding that § 2X1.1 does not apply where the defendants had set up fraudulent bank accounts but had not yet enjoyed the "fruits of their fraud").

█ Walker also argues that the district court erred by denying him a three-level downward adjustment for acceptance of responsibility, and by imposing a two-level upward adjustment for obstruction of justice. We review these factual determinations for clear error. *See, e.g., United States v. Carrera*, 259 F.3d 818, 831 (7th Cir.2001) (applying standard to obstruction of justice determination); *United States v. Williams*, 202 F.3d 959, 961 (7th Cir.2000) (applying standard to acceptance of responsibility determination). Here it is undisputed that Walker gave a false social security number to the probation officer who was investigating Walker's criminal history and release status. The court did not commit clear error by concluding that Walker, who committed bank fraud by giving false social security numbers, gave this false information to mislead the probation office regarding his criminal history and release status. *See* U.S.S.G. § 3C1.1 comment. (n. 4(h)) (obstruction of justice adjustment applies if defendant gives materially false information to probation officer); *United States v. Price*, 988 F.2d 712, 721 (7th Cir.1993) (holding that giving false social security number is grounds for applying obstruction upward adjustment); U.S.S.G. § 3E1.1 comment. (n. 4) (conduct resulting in an upward adjustment for obstruction of justice ordinarily indicates that the defendant has not accepted responsibility).

Walker next argues that the court erred by adding two points to his criminal history category under U.S.S.G. § 4A1.1(d), which calls for the increase if the defendant committed any part of the offense while on parole. Here it is undisputed that Walker was on parole from a forgery conviction in DuPage County, Illinois until May 6, 1998. Walker opened the first fraudulent bank account in March 1998 and was still on parole; thus, the court did not clearly err by adding two points to his criminal history.

One issue remains. Walker argues that the court erred by denying his motion to dismiss the indictment, which he brought one year after pleading guilty. By pleading guilty, however, Walker waived his challenge to the indictment. *See United States v. Scherl,* 923 F.2d 64, 66 (7th Cir.1991). Walker's complaint–that an agent gave perjured testimony to establish probable cause and venue within the Central District of Illinois–must have been brought prior to his guilty plea because the indictment clearly identified Walker's activities in Champaign and Danville, both within the Central District. *See United States v. Brandon,* 50 F.3d 464, 469 (7th Cir.1995) (holding that challenge to venue that is apparent on face of indictment must be raised before close of government's case). Consequently, Walker waived this challenge to the indictment by pleading guilty to the offense.

The judgment of the district court is AFFIRMED.