

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-6-2000

# United States v. Torres

Precedential or Non-Precedential:

Docket 99-1149

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Torres" (2000). *2000 Decisions.* Paper 74.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/74

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 6, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1149

UNITED STATES OF AMERICA

v.

JORGE TORRES
a/k/a
GEORGE BOYD, JR.
        Jorge Torres, Appellant

No. 99-1491

UNITED STATES OF AMERICA

v.

JORGE TORRES
a/k/a
GEORGE BOYD, JR.
Jorge Torres, Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
District Judge: Honorable Eduardo C. Robreno, Jr.

D.C. Criminal No. 98-cr-00514

Submitted Under Third Circuit LAR 34.1(a)
January 10, 2000

Before: BECKER, Chief Judge, and
ALITO and BARRY, Circuit Judges.

(Filed: April 6, 2000)

        Salvatore C. Adamo, Esquire
        100 South Broad Street
        Land Title Building, Suite 1351
        Philadelphia, PA 19110

         Attorney for Appellant

        Joel D. Goldstein, Esquire
        Assistant U.S. Attorney

          Office of United States Attorney
          Suite 1250, 615 Chestnut Street
          Philadelphia, PA 19106

           Attorney for Appellee

OPINION OF THE COURT

BARRY, Circuit Judge:

Appellant Jorge Torres was sentenced on his plea of
guilty to one count of bank fraud, in violation of 18 U.S.C.
S 1344. On appeal, he has raised various challenges to the
sentence that was imposed, most bottomed on his
contentions that he was sentenced as if the fraud had been
successful, when it was not, and there was no actual loss.
We have considered the issues he has raised andfind them
to be without merit. Because, however, two of the issues
addressed to Torres' attempted but unsuccessful fraud as
well as the issue of how explicit a district court must be
regarding a defendant's ability to pay a fine recur with
some frequency in the district courts of this Circuit (and, by
extension, in this Court), we will discuss them, albeit briefly.1

_____

1. Torres also contends that he should not have received a two-level
increase in the offense level because his offense did not involve "more

                              2


I. Background

On September 14, 1997, Jorge Torres, identifying himself
as George Boyd, opened a money market account at the
Cottman Avenue branch of the Commonwealth Bank in
Philadelphia, Pennsylvania. He presented photo

identification displaying a picture of himself and a non-
issued social security number. Ten days later, Torres, again
posing as Boyd, returned to the Cottman Avenue branch
and opened a second money market account in the name of
Kelly Services, Inc. He presented a license in Boyd's name
"c/o Kelly" from the Department of Licenses and Inspection
and deposited a subsequently dishonored $240.65 third
party check made payable to Kelly Services. On the same
day, at the Port Richmond branch of the Commonwealth
Bank, another individual using Boyd's name (surveillance
cameras indicate that it was not Torres) deposited a stolen
U.S. Treasury check in the amount of $66,021.94 and
payable to Kelly Services into the Kelly Services account. An
investigation subsequently established that Torres'
fingerprint was on the deposit slip used in that transaction.
The following day, Torres, yet again claiming to be Boyd,

appeared at the Castor Avenue branch of the
Commonwealth Bank and attempted to withdraw $24,900
from the Kelly Services account. The bank refused to permit
the withdrawal, advising Torres that the funds were
unavailable. Either shortly before or shortly thereafter, the
bank came to suspect that the account was fraudulent. It

_____

than minimal planning." See U.S.S.G.S 2F1.1(b)(2)(A). " `More than
minimal planning' means more planning than is typical for commission
of the offense in a simple form' and is `deemed present in any case
involving repeated acts over a period of time, unless it is clear that
each

instance was surely opportune.' " U.S.S.G.S 1B1.1, comment (n.1(f)).
Because generally a finding of more than minimal planning is fact
specific and because the facts of this case compel the conclusion that
more than minimal planning was involved, we will not further discuss
this issue. Nor will we discuss Torres' contention that, because he did
not profit from the fraud and there was no actual loss, he should have
but did not receive a downward departure. Where, as here, the District
Court understood that it had the ability to depart but refused to do so,
we lack jurisdiction to review that refusal. See United States v.
McQuilkin, 97 F.3d 723, 729 (3d Cir. 1996), cert. denied, 520 U.S. 1253
(1997).

notified the authorities, and Torres was subsequently
arrested.

On September 29, 1998, a grand jury in the Eastern
District of Pennsylvania indicted Torres on one count of
bank fraud, in violation of 18 U.S.C. S 1344. On November
17, 1998, Torres pled guilty and a Presentence Investigation
Report ("PSR") was prepared. The PSR noted that the
United States Sentencing Guidelines ("U.S.S.G") called for a
base offense level of six for a violation of 18 U.S.C. S 1344.
See U.S.S.G. S 2F1.1. Because the attempted loss was
$66,262.59, i.e. more than $40,000 but less than $70,000,
the base offense level was increased by five levels pursuant
to U.S.S.G. S 2F1.1(b)(1)(F). Another two levels were added
pursuant to U.S.S.G. S 2F1.1(b)(2)(A) because the offense
involved repeated acts over a period of time, and two levels
were deducted pursuant to U.S.S.G. S 3E.1.1(a) because
Torres accepted responsibility for the offense to which he
pled guilty.

Based on a total offense level of eleven and a criminal
history category of I, Torres' guideline range was eight to
fourteen months imprisonment. At the sentencing hearing
on February 8, 1999, Torres objected to the five level
increase for loss in the amount of $66,262.59, contending

that the correct loss figure should be $24,900 with only a four level increase. He argued, as well, that his actions constituted an attempt warranting only a three level increase pursuant to U.S.S.G. S 2X1.1(b)(1) and did not involve repeated acts over a period of time.

The District Court rejected each of Torres' objections and denied his motion for a downward departure. Having ruled on the objections, the Court "adopted the recommended findings of facts in the presentence investigation report as the findings of facts of the Court."

Sentence was thereafter imposed as follows:

> [T]he defendant, Jorge Torres, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 12 months. That sentence shall be a split sentence, pursuant to Section 5(c)1.1 of the sentencing guidelines. The defendant shall spend six months in custody and the balance of the sentence shall be spent

4

> in a community confinement institution to be designated by the Bureau of Prisons.

Torres was also sentenced to a five year term of supervised release and a $5,000 fine. He appealed.

Torres, still in prison after having served more than seven months, filed a "Motion for Clarification of Split Sentence and Immediate Release on Home Confinement." He argued, not surprisingly and with considerable force, that the District Court's remarks at sentencing and the sentence imposed clearly indicated that he serve six months in jail and six months in community confinement. If that was the sentence the Court intended to impose, we note, it did it wrong by not sentencing Torres to the custody of the Bureau of Prisons for six months rather than twelve, with the remaining six months in community confinement as a condition of supervised release. Be that as it may, the Court denied Torres' motion, stating that it sentenced Torres to twelve months imprisonment and only recommended to the Bureau of Prisons that the last six months be served in a community confinement facility. Torres again appealed and, in little more than a passing comment, suggests only that he disagrees with the Court's decision not to have immediately released him on home confinement. Whatever the District Court's intent at sentencing may have been, however, the fact remains, and fact it be, that both orally and in the written Judgment, the Court sentenced Torres to the custody of the Bureau of Prisons for twelve months, not six. Given that sentence, we

will affirm without further discussion the denial of Torres'
motion and will address only Torres' appeal from the
Judgment of February 8, 1999.2

II. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 18 U.S.C.
S 3231. We have jurisdiction pursuant 18 U.S.C. S 3742(a)
and (e) and 28 U.S.C. S 1291. We exercise plenary review of
the District Court's legal construction of the Sentencing

_____

2. That appeal and the appeal from the Judgment have been
consolidated by this Court for briefing and disposition.

Guidelines. See United States v. Medeiros, 884 F.2d 75, 78
(3d Cir. 1989). Factual determinations and offense level
calculations are reviewed under the clearly erroneous
standard. See United States v. Demes, 941 F.2d 220 (3d
Cir.) cert. denied, 502 U.S. 949 (1991); United States v.
Cianscewski, 894 F.2d 74, 82 (3d Cir. 1990). Where a
defendant has not raised an issue at sentencing, the
standard of review is plain error. See Fed. R. Crim. P. 52(b).

III. Discussion

A. Amount of Loss

The District Court found, as had the PSR, that the loss
was $66,262.59, i.e. the amount of the stolen check
deposited into the Kelly Services account -- $66,021.94 --
plus the amount of the bad check used to open the account
-- $240.65. Torres contends that the loss was $24,900, i.e.
the amount of the attempted withdrawal. Torres is wrong.
As this Court has stated on numerous occasions, and as
the Commentary to U.S.S.G. S 2F1.1 at note 8 provides, the
Guidelines sweep in not only actual loss but intended loss,
if that amount can be determined and is higher than actual
loss:

> This Court's precedents establish that `fraud loss is, in
> the first instance, the amount of money the victim has
> actually lost.' However, `if an intended loss that the
> defendant was attempting to inflict can be determined,
> this figure will be used if it is greater than actual loss.'

United States v. Yeaman, 194 F.3d 442, 456 (3d Cir.
1999)(emphasis added) (quoting United States v. Coyle, 63
F.3d 1239, 1250-51 (3d Cir. 1995) & Application Note 7
(now Application Note 8) to S U.S.S.G. 2F1.1); see also
United States v. Holloman, 981 F.2d 690, 693 (3d Cir.

1992), cert. denied, 509 U.S. 907 (1993); United States v. Schneider, 930 F.2d 555, 558 (7th Cir. 1991)(" `loss' within the meaning of the Guidelines includes intended, probable, or otherwise expected loss, a qualification of vital importance in a case such as this where the fraud is discovered or otherwise interrupted before the victim has been fleeced").

Torres' activities in connection with the accounts leave little or no doubt that the "intended, probable, or otherwise expected loss" here was for the full amount fraudulently deposited. Within a two week period of time, in two accounts neither of which was in Torres' name or the name of a company he had anything to do with, three branches of the same bank were hit by Torres and a cohort with a rubber check, a stolen check, and an attempted withdrawal of more than one-third of those fraudulent deposits. It was eminently reasonable for the District Court to infer that Torres intended to withdraw the balance of the deposits before the stolen check surfaced as stolen and would have done so had he not been arrested. As the Seventh Circuit put it, on similar facts,

> The S 2F1.1 commentary thus anticipates precisely the sort of situation presented in the instant case: a defendant who clearly intended to inflict a loss on his victim much greater than the `actual' loss time and circumstances (i.e., his arrest) permitted him to exact. In those situations, the Guidelines make clear that the defendant should be held accountable for the full amount of the loss he was prepared to inflict.

United States v. Strozier, 981 F.2d 281, 285 (7th Cir. 1992).

The correct measure of loss, therefore, was the entire amount that Torres fraudulently deposited in the Kelly Services account, regardless of the fact that he was prevented from making his first withdrawal. Thus, the District Court did not err in upwardly adjusting byfive levels for loss greater than $40,000 but less than $70,000, pursuant to U.S.S.G. S 2F1.1(b)(1)(F).

B. Attempt

Torres argues, next, that even if the loss figure was properly calculated, because the withdrawal of the $24,900 and, thus, the completion of the offense were thwarted, his actions constituted only an incomplete attempt to defraud the bank of the full amount of the loss, warranting a three level reduction under U.S.S.G. S 2X1.1:

> If an attempt, decrease by 3 levels, unless the
> defendant completed all the acts the defendant believed

7

> necessary for successful completion of the substantive
> offense or the circumstances demonstrate that the
> defendant was about to complete all such acts but for
> apprehension or interruption by some similar event
> beyond the defendant's control.

U.S.S.G. S 2X1.1(b)(1). See also U.S.C.G. S 2B1.1 comment
(n.2).

We cannot ignore the fact that Torres pled guilty to the
substantive, completed offense of bank fraud, and not to a
mere attempt. But even aside from that important fact,
when Torres' argument is considered solely under
S 2X1.1(b)(1), which is all that he asks this Court to do, the
simple answer is two-fold: first, as to the $24,900
attempted withdrawal, Torres had "completed all the acts
[he] believed necessary"; and, second, as to the balance of
the fraudulently deposited funds, the "circumstances
demonstrate" that he "was about to complete all such acts"
and was unsuccessful only because the bank was fortunate
enough to suspect fraudulent activity such that Torres was
subsequently arrested, and not because of any event within
Torres' control.

This conclusion is reached along the same lines that we
followed in determining the amount of the intended loss
under S 2F1.1, the guideline which concededly governs
Torres' offense. As the Strozier Court observed, "The
framers of the Guidelines noted this similarity themselves:
the critical language concerning the defendant's `intended
loss' in the S 2F1.1 commentary is preceded by the words,
`[c]onsistent with the provisions of S 2X1.1 (Attempt,
Solicitation or Conspiracy) . . . .' And so the defendant's
arguments have brought us full circle." Strozier, 981 F.2d
at 286.

The District Court did not err in rejecting Torres' request
for a three level reduction pursuant to U.S.S.G.
S 2X1.1(b)(1).

C. Imposition of the $5,000 Fine

The Guidelines provide that the "court shall impose a fine
in all cases, except where the defendant establishes that he
is unable to pay and is not likely to become able to pay any

8

fine." U.S.S.G. S 5E1.2(a). The defendant has the burden of proving his or her inability to pay. See United States v. Carr, 25 F.3d 1194, 1212 (3d Cir.)(citing U.S.S.G. S 5E1.2(a)), cert. denied, 513 U.S. 1086 (1995). A sentencing court must consider an array of factors, including evidence of the defendant's ability to pay the fine and to pay that fine over a period of time, his or her future earning capacity, any restitution or reparation that the defendant has made or is obligated to make, the burden that the fine will impose upon the defendant and others who are financially dependent on the defendant, and "any other pertinent equitable considerations." U.S.S.G. S 5E1.2(d); see also 18 U.S.C. S 3572(a); 18 U.S.C. S 3553(a); United States v. Seale, 20 F.3d 1279, 1284 (3d Cir. 1994).

The Guidelines contain a "fine table" which establishes a minimum and maximum fine based on the defendant's offense level. Based upon a total offense level of 11, Torres was subject to a fine in the range of $2,000 to $1,000,000. See U.S.S.G. S 5E1.2 (c)(4). The District Court found that this was the appropriate range "provided the defendant has the ability to pay the fine." Torres did not object to the range or to the facts in the PSR which enabled the probation officer to conclude that he could pay a fine within the appropriate range, arguing through counsel only that because "he's obviously not working [and] he has a wife and a child to support [, a] fine would be an undue hardship." The Court thereafter imposed sentence, including a $5,000 fine to be paid in equal monthly installments over Torres' five year period of supervised release.

It is important to highlight what Torres does not argue, and what he does. He does not argue that the District Court did not consider his ability -- or lack thereof -- to pay a fine. Nor does he argue that the PSR did not contain sufficiently detailed information about his financial condition and earning capacity or that any of that information was wrong. All he argues, citing that same concededly correct information, is that the record before the District Court did not establish whether he had the earning capacity to pay a fine while on supervised release. Torres is wrong.

9

Where, as here, a defendant did not at sentencing raise the issue of his or her inability to pay, a sentencing court's decision to impose a fine and the amount of the fine is reviewed for plain error. See Fed. R. Crim. P. 52(b). And where, again as here, a defendant, whose burden it was to prove his or her inability to pay by a preponderance of the

evidence, made utterly no showing in that regard and took no issue with facts of record showing an ability to pay, error sufficient to warrant relief must be very plain, indeed.

Which brings us to Torres' "the record did not establish" argument which we construe as a challenge to the fact that the District Court did not make specific findings showing that the factors which touch on a defendant's ability to pay were considered. It is, of course, a requirement in this Circuit that findings be made regarding a defendant's ability to pay a fine or that a factual record be created such that it can be said that the Court considered the issue. See, e.g., Seale, 20 F.3d at 1284; United States v. Demes, 941 F.2d 220, 223 (3d Cir.) cert. denied, 502 U.S. 949 (1991). While Torres is correct that the District Court did not explicitly find an ability to pay, it surely implicitly did so when it stated that it could impose a fine within the guideline range only if Torres had the ability to pay that fine, and thereafter imposed a fine; when it indicated in the Statement of Reasons section of the Judgment that the fine was not "waived or below the guideline range because of inability to pay" and the interest requirement on the fine was not waived or modified because of an inability to pay; and, most importantly, when it adopted the facts set forth in the PSR.

Those facts as relevant to the fine, facts with which Torres not only took no issue at sentencing but takes no issue before us, clearly indicate that Torres' earning capacity upon his release from prison would be more than sufficient to pay the fine on an installment basis, pay off some or all of his debts, and support his family. Torres, twenty-one years old at that time of sentencing, received a high school degree in 1995 and satisfied the requirements for an associates degree in computer science at a college in the Dominican Republic. He reads, writes and speaks four languages. He has held several short-term positions, such

10

as bartender, car salesman, and credit manager, and has served in the U.S. Army Reserves. He is able-bodied and in good health, with no history of mental or emotional problems or any drug or alcohol abuse.

As explained in the PSR, if upon release Torres held a forty-hour per week job at the minimum wage of $5.15 per hour, he would earn $892.66 per month, or $10,712 per year. Allowing 80% of this sum for subsistence results in $178.50 per month, or $2,142 per year for payment of any fine, restitution not being applicable in this case. Accordingly, Torres would be capable of paying thefine in less than three years while providing subsistence for his

family in addition to that provided by his wife, who works as a waitress. The District Court allowed him to pay the fine in monthly installments over a five year period, moreover, which provided ample room for Torres to satisfy in whole or in part those obligations which had not been charged off or classified as bad debts.

Given that Torres offered nothing beyond counsel's fleeting reference to the fact that Torres, not then working because he was in prison, "has a wife and a child to support," he failed to carry the "burden of persuasion (and, logically, the burden of production) . . . on the issue of his financial resources and needs." United States v. Voigt, 89 F.3d 1050, 1093 (3d Cir.), cert. denied, 519 U.S. 1047 (1996) (restitution under Victim and Witness Protection Act). That aside, this Court's requirement of specific findings will be satisfied if the District Court adopts a PSR which contains adequate factual findings with reference to an ability to pay such that there can be effective appellate review. See United States v. Hallman, 23 F.3d 821, 827 (3d Cir.) cert. denied, 513 U.S. 881 (1994) (rejecting claim that the District Court failed to make specific findings with reference to ability to pay restitution where it adopted the specific findings of the PSR). See also United States v. Castner, 50 F.3d 1267, 1277 (4th Cir. 1995). Because the unchallenged facts in the PSR supported the imposition of a fine within the guideline range, and because the District Court adopted the facts of the PSR, there was no error in imposing that fine without specific findings, much less plain error.

11

IV. Conclusion

For the reasons given, the judgments of the District Court of February 8, 1999 and May 28, 1999 will be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

12