UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 13, 2006
Decided August 3, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

No. 05-2146

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| v. | No. 03-CR-501-1 |
| MITANETTE CALVIN, *Defendant-Appellant.* | Amy J. St. Eve, *Judge* |

**ORDER**

Mitanette Calvin was sentenced to 63 months of imprisonment after she pleaded guilty to mail fraud and wire fraud. On appeal she argues that the district court should have reduced her offense level by three under an adjustment for "partially completed" offenses because she collected only part of the money she attempted to steal from her victims. But she is not entitled to receive the adjustment because it does not apply to the facts of her case.

Beginning in October 2000, Calvin started offering for sale through internet auctions items she did not possess. Using e-mail accounts opened under her own name as well as several aliases and the names of unwitting employees, Calvin advertised CDs, DVDs, clothing, department-store merchandise, and consumer

electronics for sale on eBay.com, uBid.com, Yahoo.com, TradeOut.com, and RetailExchange.com.  Potential buyers bid on the goods, and after the close of the auction, Calvin instructed the highest bidder to send payment to her via check, money order, or Western Union wire transfer.  Calvin also negotiated non-auction sales directly with other victims by telephone and e-mail.  After she received payment, she shipped goods that did not match the description or were inferior in quality to those she advertised for auction, or she shipped nothing at all.

Calvin's boldest misrepresentation involved advertising nonexistent television sets for sale and auction.  Between December 2001 and April 2002, Calvin posted 157 plasma television sets on eBay, which accounted for approximately one half of the total value of goods she posted on that site.  Although eBay terminated the auctions shortly after Calvin posted them, occasionally a person would contact Calvin directly to "buy it now"[1] before eBay could intervene.  On other occasions, Calvin initiated contact with people who had bid on the auctions prior to eBay's intervention to ask whether they were still interested "in a good deal."  Although Calvin "sold" only two of the television sets for a total of $13,500, she ultimately quoted a price or agreed to sell television sets to 74 persons for more than $493,000.

In May 2003, a federal grand jury charged Calvin with four counts of mail fraud, 18 U.S.C. § 1341, and four counts of wire fraud, 18 U.S.C. § 1343.  Calvin pleaded guilty to one count each of mail fraud and wire fraud.  In her plea agreement she admitted scheming to defraud buyers by misrepresenting the items she had for sale and using the mail and wires to advance her scheme.  But she disagreed with the government over the amount of loss attributable to her and reserved her right to present evidence on the amount of losses prior to sentencing in the plea agreement.

The district court conducted a three-day sentencing hearing during which the government presented largely uncontested evidence concerning the sums of money victims sent to Calvin as well as Calvin's communications with her victims.  Eight victims recounted sending Calvin money after winning an auction, sometimes thousands of dollars, but received nothing in return.  Four others stated they each sent Calvin thousands of dollars and received, for example, a box of cassette tapes or video pinball games in return.  And one victim testified that, after he successfully bid on an auction for what Calvin advertised as authentic T-Rex fossils, he never sent payment because he could not verify the source of the fossils and thought it "odd" that Calvin refused to accept payment by credit card.  The government also

---

[1]eBay's "buy it now" option allows buyers to avoid the auction process by purchasing items instantly from the seller at a fixed price. http://pages.ebay.com/services/buyandsell/buyitnow.html.

summarized three categories of losses attributable to Calvin. First, the government confirmed actual funds sent to Calvin totaling $128,742. Second, the government calculated intended losses of $232,000 based upon e-mails showing that Calvin instructed individuals to send her money but where Calvin's receipt of the funds was unconfirmed. Third, the government calculated additional intended losses of $493,000 based upon e-mails between Calvin and unsuspecting victims in which Calvin quoted prices, negotiated terms, or agreed to sell non-existent plasma television sets. In addition, although the government conceded that Calvin did not succeed in collecting all of the funds she had set out to, it submitted evidence that eBay terminated many of her auctions to protect bidders from Calvin's fraud and that some victims withheld payment because they suspected foul play. On cross-examination Calvin tried to challenge the losses claimed by some witnesses, but she presented no evidence contradicting the government's calculations.

The district court concluded that Calvin was responsible for actual losses of $128,742 and intended losses of $493,000. The court explained that it calculated the intended-loss figure based upon Calvin's correspondence with potential buyers of plasma television sets because those transactions were "a perfect example of the defendant's intent to . . . take money from others." The court then increased Calvin's base offense level of 6 by 14 levels to account for a total loss of $621,742. *See* U.S.S.G. § 2B1.1(a), (b)(1)(H) (2001). After other adjustments that are not in dispute, the court calculated a total offense level of 26 and a criminal history category of I, resulting in a guidelines range of 63 to 78 months' imprisonment.

Calvin objected, arguing that the scheme was only "partially completed" insofar as it involved the plasma television sets and thus her offense level should be lowered three levels under U.S.S.G. § 2X1.1(b)(1). That guideline, which is referenced in Application Note 13 to the 2001 version of § 2B1.1, provides for a three-level reduction for crimes that were attempted but not completed, and then only if the defendant had not "completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control." U.S.S.G. § 2X1.1(b)(1) (2001); *see id.* § 2B1.1 cmt. n.13. The district court rejected this argument, reasoning that 2X1.1(b)(1) did not apply because the mail and wire frauds were completed even though Calvin failed to collect all the money she intended. The court proceeded to sentence Calvin to 32 months' imprisonment on the mail fraud count and a consecutive 31 months' imprisonment on the wire fraud count.

On appeal Calvin challenges the district court's finding that her crimes were complete, not partially complete. Because the district court calculated an intended loss of $493,000 for negotiations that never resulted in payment and were not

interrupted by law enforcement, Calvin argues, the plasma-television scam was only "partially completed." Thus, she says, the court should have applied § 2X1.1(b)(1) and decreased her overall offense level by three levels. Calvin does not contest the district court's computation of actual or intended losses.

We review the district court's findings of fact for clear error, and its application of the guidelines to the facts *de novo. United States v. McCaffrey,* 437 F.3d 684, 688 (7th Cir. 2006). Application Note 4 of § 2X1.1 instructs that the sentencing court must decrease a defendant's offense level by three levels where the defendant has completed part, but not all, of the acts necessary for the successful completion of the intended offense. U.S.S.G. § 2X1.1, cmt. n.4 (2001); *United States v. Torres*, 209 F.3d 308, 312 (3d Cir. 2000). But the reduction does not apply when the defendant did not complete all the elements of the offense because of "apprehension or interruption by some similar event beyond the defendant's control." U.S.S.G. § 2X1.1(b)(1) (2001); *see Torres*, 209 F.3d at 312. Thus the relevant inquiry is whether Calvin completed all the acts necessary to commit the substantive offenses of mail fraud as well as wire fraud. *See United States v. DeSantis*, 237 F.3d 607, 611-12 (6th Cir. 2001).

Calvin is not entitled to the three-level reduction because she completed every act necessary to commit the substantive offenses of mail fraud and wire fraud. A defendant commits mail or wire fraud when she (1) participates in a scheme to defraud (2) with intent to defraud and (3) uses the mail or wires in furtherance of that scheme. *See United States v. Alhalabi*, 443 F.3d 605, 611 (7th Cir. 2006). By the very nature of these offenses, the mere existence of a scheme plus the use of the mail or an interstate wire to further the fraudulent enterprise completes the offense. *United States v. Blitz*, 151 F.3d 1002, 1011 (9th Cir. 1998); *see United States v. Carrington*, 96 F.3d 1, 7-8 (1st Cir. 1996). Here Calvin devised a scheme to swindle unwitting victims out of their money and used the mail, internet, telephones, and e-mail to further her scheme. Moreover, Calvin pleaded guilty to one count each of mail fraud and wire fraud, and a "defendant's plea of guilty to the substantive, completed offense of fraud is powerful evidence that [she] merited no reduction for the allegedly uncompleted nature of [her] scheme." *United States v. Strozier*, 981 F.2d 281, 285 (7th Cir. 1992); *see Torres*, 209 F.3d at 312.

The fact that Calvin did not succeed in achieving the full amount of loss she intended does not transform her scheme into a "partially completed" offense for purposes of § 2X1.1. *See Strozier,* 981 F.3d at 285 (explaining that a fraud is not incomplete merely because circumstances prevented the defendant from inflicting greater loss upon the victim); *United States v. Lorefice*, 192 F.3d 647, 655-56 (7th Cir. 1999); *United States v. Coffman*, 94 F.3d 330, 337 (7th Cir. 1996) (explaining that even if the fraud inflicted no actual loss it is nevertheless a completed offense); *see also DeSantis*, 237 F.3d at 612-13 (explaining that "the relevant substantive

offense for purposes of evaluating § 2X1.1(b)(1) attempts is the fraud itself, not the fraudulent deprivation of a particular sum"); *Blitz*, 151 F.3d at 1011 (explaining that for mail fraud and wire fraud "with or without the money, the offense was complete"); *Carrington*, 96 F.3d at 7. Although Calvin cites several cases in support of her contention that an offense is partially complete for purposes of § 2X1.1 when a defendant has collected only a portion of the proceeds anticipated by the criminal conduct, those cases more accurately demonstrate instances where a defendant has successfully completed only a portion of the intended substantive offense. *See, e.g., United States v. Lamb*, 207 F.3d 1006 (7th Cir. 2000) (explaining that § 2X1.1 applied where inept bank burglar intended to steal entire $215,000 in bank's vault but brought no tools that would allow him to breach vault); *United States v. Sung*, 51 F.3d 92 (7th Cir. 1995) (holding that § 2X1.1 applied where the defendant obtained some but not all materials necessary to manufacture and package intended quantity of counterfeit goods). But mail fraud and wire fraud are far different than burglary and counterfeiting. On the occasions that this court has considered the application of § 2X1.1 to mail fraud and wire fraud, we have determined that § 2X1.1 is inapplicable because of the unique nature of the substantive offense: the crime is complete the instant the mail or wires are used to advance a fraudulent scheme. *See Strozier*, 981 F.2d at 285-86*; Lorefice*, 192 F.3d at 655-56; *Coffman*, 94 F.3d at 333-34.[2]

AFFIRMED.

---

[2]Other circuits concur. *See, e.g., Blitz*, 151 F.3d at 1011 (explaining that mail fraud and wire fraud are "unique" because "the mere existence of the scheme plus the use of the mail, or an interstate wire, to further the scheme" completes the crime); *Carrington*, 96 F.3d at 7-8 (explaining that, unlike crimes that are complete only after a defendant's object has been attained, wire fraud is complete once a defendant "devise[s] a scheme to defraud and then transmit[s] a wire communication for the purposes of executing the scheme").