NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2590
_____

UNITED STATES OF AMERICA

v.

ANTONIO GARCIA-CELIS,

Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-11-cr-00320-001)
District Judge:  Honorable Sylvia H. Rambo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 10, 2013

Before:  SCIRICA, AMBRO, and FUENTES, *Circuit Judges*.

(Filed: January 18, 2013)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

In this appeal, we are asked to consider whether the District Court improperly

denied Antonio Garcia-Celis's request for a downward departure when it sentenced him

1

to 27 months' imprisonment for a conviction for illegal reentry. For the reasons set forth below, we will affirm the District Court's judgment and sentence.

**I.**

Because we write primarily for the parties, we set forth only the facts and procedural history relevant to our conclusion.

Garcia-Celis is a Mexican citizen. In May 1997, after being convicted in Oregon state court of robbery in the third degree and sentenced to 20 days' imprisonment and 24 months' probation, Garcia-Celis was ordered removed from the United States by an immigration court and advised that he was not permitted to apply for readmission for a period of five years. However, in 2002, Garcia-Celis reentered the United States. In July 2008, after being convicted of driving under the influence in Pennsylvania state court, Garcia-Celis was again removed from the United States, and he was advised that he could not apply for readmission for a period of twenty years. Around July 2011, Garcia-Celis again illegally reentered the United States. In October 2011, after a second conviction for driving under the influence in Pennsylvania state court, Garcia-Celis admitted to immigration agents that he had been removed from the United States and reentered without permission. On December 19, 2011, Garcia-Celis pleaded guilty to illegal reentry after a felony conviction, in violation of 8 U.S.C. §§ 1326(a), (b)(1).

Prior to sentencing, the Probation Office prepared a Presentence Investigation Report ("PSR") and recommended an offense level of 17 and criminal history category of III, resulting in an advisory Guidelines range of 30 to 37 months for Garcia-Celis. The total offense level included a 12-level enhancement under U.S.S.G. § 2L1.2(a) for prior

removal after a conviction for a crime of violence—the Oregon robbery conviction. The criminal history category included four points from the two DUI convictions and assigned zero points for the Oregon robbery conviction.

On May 21, 2012, the District Court conducted a sentencing hearing during which Garcia-Celis objected to the 12-level enhancement. Section 2L1.2(a) provides a 12-level enhancement for reentering after a prior removal following a conviction for a felony that is a "crime of violence" that did not receive criminal history points in the Guidelines calculation. Garcia-Celis argued that, based on application note 7, a departure "may be warranted" when the "offense level substantially overstates . . . the seriousness of a prior conviction . . . and the prior conviction does not meet the definition of aggravated felony at 8 U.S.C. § 1101(a)(43)." U.S.S.G. § 2L1.2(a) app. n. 7. Garcia-Celis argued to the District Court that a downward departure was warranted in this case because an offense level of 17 overstates the seriousness of his criminal history, given that the prior robbery conviction was not an aggravated felony and resulted in a sentence of only 20 days' imprisonment. The District Court initially responded that the robbery was an aggravated felony because "[i]t's what he could potentially face" but was corrected by the Government who explained that the Court must look at the "actual sentence" under 8 U.S.C. § 1101(a)(43), rather than the potential sentence, in determining whether the robbery conviction was an aggravated felony. (App. 37.) Garcia-Celis then argued in support of a second basis for a downward departure.

The District Court ultimately rejected both of Garcia-Celis's requests for a downward departure. The District Court noted that Garcia-Celis's alcohol problem had

3

led to the endangerment of other people, commenting that one of the DUI convictions involved an accident with another vehicle, and that Garcia-Celis drove without a license. This led to the District Court's findings that Garcia-Celis "continu[ed] to violate the law" and that "[h]e has no respect for it." (App. 44.) Though the District Court declined to depart from a total offense level of 17, following argument on Garcia-Celis's criminal history and its effect on his eligibility for the fast-track sentencing program, the District Court *sua sponte* granted a downward variance in his criminal history category by one level, reducing it from level III to level II. The defense responded and stated, "I want to make sure you understand my argument," to which the District Court replied, acknowledging its understanding of its legal authority, "I do understand your argument. But I still think it's discretionary with me with regard to your 2L1.3 footnote 7." (App. 45.) With a total offense level of 17 and a criminal history category of II, Garcia-Celis had an advisory Guidelines range of 27-33 months. The District Court then sentenced Garcia-Celis to the 27 months' imprisonment and three years of supervised release. Garcia-Celis timely appealed.

**II.**

The District Court had jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3583(e). We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We exercise plenary review over a district court's rulings on questions of law and interpretation of the Sentencing Guidelines. *United States v. Doe*, 564 F.3d 305, 307 n. 2 (3d Cir. 2009); *United States v. Mateo*, 560 F.3d 152, 154 (3d Cir. 2009). However, we lack jurisdiction to review a district court's application of its discretion to deny a downward departure.

4

*United States v. Torres*, 209 F.3d 308, 309 n. 1 (3d Cir. 2000) ("Where, as here, the District Court understood that it had the ability to depart but refused to do so, we lack jurisdiction to review that refusal."); *United States v. Denardi*, 892 F.2d 269, 271-72 (3d Cir. 1989) ("To the extent this appeal attacks the district court's exercise of discretion in refusing to reduce the sentences below the sentencing guidelines, it will be dismissed for lack of appellate jurisdiction."). On appeal, Garcia-Celis argues that the District Court misunderstood its authority to grant a downward departure in this case. He argues that the District Court denied the departure because of its view that an "aggravated felony" turned on whether the conviction had a potential sentence of over one year, rather than whether a one-year sentence was actually imposed. The Government, however, contends that the District Court understood its legal authority and exercised its discretion in denying the request. Thus, this appeal requires us to determine whether we have jurisdiction based on whether the District Court ruled that it did not have the authority or discretion to grant a downward departure.

At sentencing, Garcia-Celis argued that under application note 7 to section 2L1.2(a), a downward departure was warranted because the offense level substantially overstated the seriousness of his prior robbery conviction and because the robbery conviction did not meet the definition of an aggravated felony. The Government then responded and emphasized that the application note stated that a departure "may be warranted" under some circumstances, but that the Government believed "it's not appropriate in this particular matter." (App. 36-37.) Regarding the definition of an "aggravated felony," the Government correctly informed the District Court that the prior

robbery conviction "is not an aggravated felony in this particular circumstance," provided the definition for an aggravated felony under the Immigration and Nationality Act, and stated that the robbery conviction did not qualify because "[Garcia-Celis's] sentence didn't exceed one year." (App. 37.) However, the District Court responded, "No, no, no. He wasn't sentenced to that. It's what he could potentially face, is it not?" (App. 37.) The Government immediately corrected the District Court and stated that the "actual sentence" must "exceed[] one year for it to be an aggravated felony." (*Id.*)

After further argumentation by the parties on Garcia-Celis's second requested downward departure based on his ineligibility for the fast track program, the District Court ruled, "I'm not going to give a downward departure, but I will give a variance of one level in consideration of his criminal history. I will not exercise the discretion to grant him consideration for the fast track program. . . . But I will grant him a variance based on the criminal history." (App. 43-44.) As already noted, the defense responded, "Wait a minute. . . . I want to make sure you understand my argument." (App. 44-45.) The District Court then stated, "I do understand your argument. But I still think it's discretionary with me with regard to your 2L1.3 footnote 7. So it doesn't make any difference whether I would have granted him a departure as opposed to a variance." (App. 45.)

It is clear that the District Court understood the discretionary nature of the departure under section 2L1.2(a). At no point did the Court indicate that it lacked the authority to depart. To the contrary, it recognized that it had the ability to depart but was refusing to do so. Thus, we lack the jurisdiction to review the District Court's decision.

*United States v. Jackson*, 467 F.3d 834, 839 (3d Cir. 2006) ("[A]s it was pre-*Booker*, courts of appeals post-*Booker*, have no authority to review discretionary denials of departure motions in calculating sentencing ranges.").

### III.

For the foregoing reasons, we will affirm the District Court's judgment and sentence.