NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4527
_____

UNITED STATES OF AMERICA

v.

GIOVANNI ARENA,
                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-12-cr-00457-001)
District Judge:  Hon. Jerome B. Simandle
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 3, 2015

Before:  McKEE, *Chief Judge,* JORDAN, and VANASKIE, *Circuit Judges*.

(Filed: December 9, 2015)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Giovanni Arena appeals his conviction and sentence following a jury trial in the

United States District Court for the District of New Jersey.  The jury convicted him of

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

1

various offenses related to a fraud scheme he perpetrated against his would-be business partner, Ellis Rosenberg. We will affirm.

## I.     Background

### A.     Factual Background

Between 1995 and 2009, Arena defrauded Rosenberg of over $1.2 million and failed to report that income to the IRS.  The two men met in 1995 in the Harrisburg area, where Rosenberg managed the books and records of Progressive Amusements ("Progressive"), a family business dealing in coin-operated juke boxes and entertainment devices.  Arena operated a nearby pizza restaurant, in which Progressive's machines were installed.  Arena persuaded Rosenberg to lend him $13,150 to cover repairs and expenses for the restaurant; he never repaid the loan.

Eight years later, Arena renewed his acquaintance with Rosenberg.  Arena had moved to New Jersey and told Rosenberg that he was opening another pizza restaurant. He offered to repay the 1995 debt and to make Rosenberg a partner in the restaurant, if Rosenberg would lend the money to get it started.  From 2004 to 2008, Rosenberg sent Arena dozens of envelopes via the U.S. Postal Service containing either cash or checks payable to Arena.  Most of those payments were drawn on Progressive's checking account, and Rosenberg also resorted to taking money from his mother and brother. Rosenberg generally made payments after Arena suggested that, with just a bit more money, he could get the pizza restaurant up and running.  Rosenberg never went to inspect the restaurant, nor did he memorialize any of his investment payments.

Unfortunately for Rosenberg, the restaurant never existed.   Instead, Arena lost the

2

bulk of the money, over $700,000, in Atlantic City casinos. Arena also used Rosenberg's money for personal purchases, including a series of cars – a BMW convertible, two Maseratis, a Chevrolet Camaro, a Toyota FJ Cruiser, and a Toyota Celica. Nine of those personal transactions became the basis of the money-laundering charges against Arena – specifically, seven cash buy-ins at the Borgata Hotel and Casino, an $18,000 Bank of America cash withdrawal, and a cash payment of $17,449 to a Toyota dealer.

In 2009, IRS investigators approached Rosenberg when they discovered from bank records that he had made substantial payments to Arena, who in turn filed no federal income tax returns. Rosenberg agreed to cooperate with the investigation and consented to having his telephone conversations with Arena recorded.

The investigators obtained warrants to search Arena's motel room and storage facility and to seize his Maserati and Camaro. In the process of executing the warrants, they found Arena, with his adult son, at a mall in Deptford, New Jersey and informed him that he was under investigation for tax offenses. Arena spoke with the investigators in a hall outside the mall's closed police substation, falsely claiming that he had received money from Progressive as a return on an investment he had made in the company. He also said he had tried to fill out tax forms at the casinos.

Because they were seizing the Camaro that Arena had driven to the mall, the investigators offered him and his son a ride back to Arena's motel, which they accepted. There, Arena continued to speak with the investigators and falsely claimed to have filed tax returns as the owner of a pizza restaurant, which he had in fact closed many years before. Arena also made more directly self-incriminating statements by admitting that he

3

had used money received from Progressive to purchase the Maserati and that he had recently removed $200,000 from a safe deposit box, which he offered to let the agents search if they would return to him the $80,000 he had stashed in the Maserati's trunk.

Ten days later, Arena met at the local IRS office with the lead investigator on his case. In that conversation, Arena repeated and augmented his previous explanations for how he came by the money and why he had failed to pay taxes. He admitted both that he had received over one million dollars from Rosenberg and that he had gambled away a large portion of it.

In the meantime, Arena had left voice mail messages for Rosenberg that led to his witness tampering charge. He asked Rosenberg to corroborate the claims that he had received money from Progressive as a return on investment or as an employee. When Rosenberg did not respond, Arena left a message threatening to falsely tell the IRS that Rosenberg had invested millions in other pizza shops.

### B.     Procedural History

On July 10, 2012, a grand jury issued a 35-count indictment charging Arena with multiple counts of mail fraud, money-laundering, and tax evasion, and one count of witness tampering. Arena moved to suppress his statements to law enforcement because he had not received *Miranda* warnings. The District Court denied the motion, ruling that his conversations with investigators were non-custodial. Following the presentation of evidence at trial, the jury found Arena guilty of fifteen counts of mail fraud in violation of 18 U.S.C. § 1341, eight counts of money laundering in violation of 18 U.S.C. § 1957, three counts of failure to file an income tax return in violation of 26 U.S.C. § 7203, and

4

the single count of witness tampering in violation of 18 U.S.C. § 1512(b)(3). At

sentencing, the District Court considered mitigating arguments about Rosenberg's

carelessness in falling prey to the crime and about Arena's poor physical and mental

condition, his gambling and substance abuse problems, and his troubled past. The Court

then sentenced Arena to 70 months' imprisonment, the bottom of the guidelines range.

He timely appealed.

## II.     Discussion[1]

Arena raises five arguments for why his conviction or sentence should be

overturned. We consider each in turn.

### A.     *Miranda* **Argument to Suppress Statements to Investigators**[2]

His first claim is that the District Court erred by failing to exclude the statements

that he made to law enforcement agents at the Deptford mall. He asserts that he was

subjected to custodial interrogation without receiving *Miranda* warnings and that his

statements should therefore have been suppressed.

"*Miranda* ... requires warnings only when the person the police are questioning is

in custody." *United States v. Willaman*, 437 F.3d 354, 359 (3d Cir. 2006) (citing

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 as to the challenges to each conviction and pursuant to 18 U.S.C. § 3742(a) as to the challenges to the sentence.

[2] In reviewing "whether custodial police interrogation has taken place," we "accept the district court's findings of primary historic fact unless they are clearly erroneous," but we "exercise plenary review ... with respect to the district court's determination as to whether the police conduct found to have occurred constitutes custodial interrogation under all the circumstances of the case." *United States v. Calisto*, 838 F.2d 711, 717 (3d Cir. 1988).

5

*Miranda v. Arizona*, 384 U.S. 436, 468 (1966)). "A person is in custody when he either is arrested formally or his freedom of movement is restricted to 'the degree associated with a formal arrest.'" *Id.* at 359 (quoting *United States v. Leese*, 176 F.3d 740, 743 (3d Cir. 1999)). Moreover, "[n]ot all restraints on freedom of movement amount to custody for purposes of *Miranda*." *Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012). We must ask "the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* at 1190.

According to the District Court's unchallenged factual findings, Arena "wasn't handcuffed," and "guns weren't pulled." (Supplemental App. at 16-17.) "He wasn't booked, wasn't photographed, [or] fingerprinted"; "all the things that are hallmarks of a custodial interview just didn't exist." (*Id.* at 17.) Arena and the officers "were in a hallway outside a locked, little tiny police substation." (*Id.*) Moreover, after speaking to IRS and Postal Service officers in this setting, Arena voluntarily left with them when he accepted a "courtesy" ride back to his hotel because the officers were seizing his car pursuant to a warrant. (*Id.* at 169.) Based on this record, we agree with the District Court that Arena's conversation with the officers was not a custodial interview.

**B.   Rule 404(b) Argument**[3]

Next, Arena claims that the District Court erred in admitting as evidence his credit application to a Toyota dealer for purchasing the FJ Cruiser. He argues that the

---

[3] Because Arena did not raise his evidentiary objection at trial, we review for plain error. *See United States v. DeMuro*, 677 F.3d 550, 557 (3d Cir. 2012).

application, which stated that his monthly income was $70,000, was introduced as a prior bad act unrelated to his prosecution, in violation of Federal Rule of Evidence 404(b).

That 404(b) claim, however, mischaracterizes the reasons for which the government introduced the credit application. The application was direct evidence for the mail fraud and tax evasion charges, not an attempt to show some collateral act of fraud. "[E]vidence is intrinsic," and therefore does not run afoul of Rule 404(b), "if it directly proves the charged offense." *United States v. Green*, 617 F.3d 233, 248 (3d Cir. 2010) (internal quotation marks omitted). As to the mail fraud charges, the government introduced the credit application as part of a series of documents to show that Arena was defrauding Rosenberg by spending money on cars for himself rather than on opening a restaurant. As to the tax charges, the government implicitly endorsed the basic truth of Arena's income claim, as the premise of the tax evasion charges was that Arena failed to file tax returns despite a significant income.[4]

For those reasons, the credit application may have been admissible even had Arena objected at trial. It was certainly not, then, plain error for the Court to admit it in the absence of any objection.

---

[4] The government also asserted that "Arena's purchase of the vehicle ... was a specifically charged act of money-laundering." (Appellee's Br. at 37.) Not so. The indictment did allege an act of money laundering at the same Toyota dealer, but that was the cash purchase of the Toyota Celica – four months before the credit application for the FJ Cruiser. Thus, the credit application was not direct evidence of a charged act of money laundering.

7

## C.    Jury Instructions[5]

Arena also argues that the trial court erred in instructing the jury that the negligence of the victim was not a defense to the crime of mail fraud.  He acknowledges, though, that our precedent supports the District Court's instruction.[6]  That being the case, we reject Arena's claim of error.

## D.    Indictment Given to the Jury[7]

Arena's last argument against his several convictions is that the District Court erred in giving the indictment to the jury during deliberations.  He suggests, as a general proposition, that providing an indictment to the jury unfairly frames the case in the government's favor and acts as "a tool of advocacy well beyond its originally intended function" to provide notice to the defendant of the charges against him.  (Appellant's Br. at 14-15.)  Arena concedes, however, that our case law is clear that a trial judge may "allow[] the jurors to have a copy of the indictment with them during their deliberations ... subject to a limiting instruction that the indictment does not constitute evidence, but is an accusation only."  *United States v. Todaro*, 448 F.2d 64, 66 (3d Cir. 1971).  The

---

[5] "Review of the legal standard enunciated in a jury instruction is plenary, but review of the wording of the instruction, *i.e.*, the expression, is for abuse of discretion." *United States v. Yeaman*, 194 F.3d 442, 452 (3d Cir. 1999) (internal citation omitted).

[6] The District Court took its language directly from our Model Charge (Criminal) 6.18.1341-1.  *Cf. United States v. Hoffecker*, 530 F.3d 137, 177 (3d Cir. 2008) (upholding a trial court "instruction that the negligence of a victim was not a defense to the charged crimes").

[7] "[A]llowing the jurors to have a copy of the indictment with them during their deliberations ... is a matter within the discretion of the District Judge," *United States v. Todaro*, 448 F.2d 64, 66 (3d Cir. 1971), so we review the decision for abuse of discretion.

District Court provided just such an instruction, after carefully considering the arguments put forward by Arena for excluding the indictment. We therefore see no basis to conclude that the District Court abused its discretion.

### E. Sentence[8]

Finally, Arena challenges his sentence. His first objection is that the District Court erred in calculating his guidelines range. He claims that the Court overstated the dollar amount of the fraud when it accepted the government's contention that Rosenberg gave Arena the cash that he withdrew from Progressive. Having heard testimony on the issue from Arena, from Rosenberg, and from the lead IRS case agent, the Court reasonably concluded that the government's position was more credible than Arena's assertion that he received no cash from Rosenberg, and Arena has presented no argument that persuades us that the District Court clearly erred in that finding.

Arena also contends that the District Court erred by denying him several downward departures, but the Court considered each of his claims and explicitly determined that no departure was warranted. "Where, as here, the District Court understood that it had the ability to depart but refused to do so, we lack jurisdiction to review that refusal." *United States v. Torres*, 209 F.3d 308, 309 n.1 (3d Cir. 2000).

---

[8] We "review factual findings relevant to the Guidelines for clear error." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). "We exercise plenary review of the District Court's legal construction of the Sentencing Guidelines." *United States v. Torres*, 209 F.3d 308, 311 (3d Cir. 2000). "[W]e review the sentence imposed by the District Court for reasonableness ... ." *United States v. Goff*, 501 F.3d 250, 254 (3d Cir. 2007).

Lastly, Arena contends that the sentence he received is substantively unreasonable, even though it was the bottom of the applicable guidelines range. Because he does not "take issue with the procedural component of the sentencing," (Appellant's Br. at 29), we "will affirm [the sentence] unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). The District Court fully considered Arena's arguments for leniency and provided a well-reasoned explanation for declining a downward variance. There was nothing unreasonable about that decision.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment and sentence of the District Court.