NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2032
_____

UNITED STATES OF AMERICA

v.

EVRIDIKI NAVIGATION INC;
LIQUIMIR TANKERS MANAGEMENT SERVICES INC,
Appellants
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Nos. 1-19-cr-00066-002, 1-19-cr-00066-003)
District Judge: Honorable Richard G. Andrews
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 21, 2023
_____

Before: RESTREPO, PHIPPS, and ROTH, *Circuit Judges*.

(Filed: May 31, 2023)
_____

OPINION[*]
_____

PHIPPS, *Circuit Judge*.

This appeal involves corporate criminal liability for violations of federal law

implementing international treaties governing ocean pollution.[1]  Although it appeared

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] *See* International Convention for the Prevention of Pollution from Ships, Nov. 2, 1973, 1340 U.N.T.S.  184; Protocol of 1978 Relating to the International Convention for the Prevention of Pollution from Ships, Feb. 17, 1978, 1340 U.N.T.S. 61; Act to Prevent

that a Liberian-registered petroleum tanker, the *Evridiki*, discharged significant amounts of oily wastewater, known as 'bilge,' in international waters, those apparent discharges by a foreign vessel in international waters fall beyond the scope of the applicable federal law. *See United States v. Abrogar*, 459 F.3d 430, 434–35 (3d Cir. 2006) (concluding that the relevant federal law reaches violations by "foreign vessels" only in U.S. ports or waters). But while anchored in the Delaware Bay, a navigable waterway of the United States, the vessel's chief engineer (i) failed to maintain an accurate oil record book in violation of 33 U.S.C. § 1908(a) and 33 C.F.R. § 151.25; (ii) falsified record entries in violation of 18 U.S.C. § 1519; (iii) obstructed justice in violation of 18 U.S.C. § 1505; and (iv) made false statements in violation of 18 U.S.C. § 1001. After the chief engineer's conviction for those offenses, the District Court imposed a sentence, including a $7,500 fine. On appeal, this Court upheld the chief engineer's conviction and fine. *See United States v. Vastardis*, 19 F.4th 573, 577, 589 (3d Cir. 2021).

The government also charged the ship's corporate owner, Evridiki Navigation, and its corporate operator, Liquimar Tankers Management Services, both of which are incorporated in Liberia and share an address in Greece, with the same four offenses. As a matter within the original jurisdiction of the District Court, *see* 18 U.S.C. § 3231, a jury found both corporations guilty, and the District Court fined Evridiki $2 million and Liquimar $1 million. Timely appealing the judgments and sentences, the corporate defendants now dispute their convictions and the accompanying fines. *See* 28 U.S.C. § 1291; 18 U.S.C. § 3742(a). For the reasons below, we will affirm the judgments and sentences.

---

Pollution from Ships, Pub. L. No. 96-478, 94 Stat. 2297 (1980) (codified at 33 U.S.C. § 1901 *et seq.*).

2

**A.** **Sufficient Evidence Supports the Corporations' Vicarious Criminal Liability for the Offenses of the Chief Engineer.**

A corporation can be held vicariously liable for a criminal offense committed by its agent. For such liability to attach, the agent must have been acting within the scope of his or her authority and must have been motivated, at least in part, to benefit the corporation. *See United States v. Am. Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 204–05 (3d Cir. 1970); *see also United States v. Singh*, 518 F.3d 236, 250 (4th Cir. 2008) (explaining that vicarious liability also "arises if the employee or agent has acted for his own benefit as well as that of his employer"). At trial, the corporate defendants moved for acquittal on the theory that the evidence did not permit those findings, and the District Court denied that motion. On appeal, they do not dispute that the chief engineer was their agent acting within the scope of his authority. Instead, they contend that he was acting solely for his own benefit – not out of concern for their corporate interests. But to overturn the jury verdict against them, the corporations must show that no rational juror, beyond a reasonable doubt, could have inferred otherwise. *See United States v. Caraballo-Rodriguez,* 726 F.3d 418, 430–31 (3d Cir. 2013) (en banc). They have not met that standard.

The evidence of the chief engineer's partial intent to serve the ship's corporate owner and corporate operator is circumstantial but still sufficient. On March 11, 2019, when Coast Guard officers boarded and inspected the *Evridiki* in the Delaware Bay, they asked the chief engineer to run the vessel's oily water separator, and the attached oil content meter reported zero parts per million ('ppm') of oil in the bilge. A Coast Guard officer, in the presence of the chief engineer, then discovered two valves – one hidden – that would shunt oily wastewater away from the oil content meter. After both valves were opened, the meter's oil reading rose to at least forty ppm. The Coast Guard

reviewed the meter's memory chip and the oil record book, maintained by the chief engineer. While the oil record book reported that recent discharges properly ran through pollution control equipment, the meter's corresponding records indicated oil content between zero and two ppm for those discharges. That data aroused the Coast Guard's suspicion that, during high seas operations, the chief engineer was keeping the valves closed, thereby preventing the meter from sampling the oily bilge and blocking its discharge. But the chief engineer repeatedly told the Coast Guard that he ran the oily water separator with the valves open.

The corporations contend that the chief engineer, in committing these offenses, acted solely to protect himself and to their detriment. They blame the chief engineer for allowing the pollution control equipment to fall into disrepair and falsifying records to cover his incompetence. But the chief engineer was not the only engineer to sign oil-record-book entries indicating suspiciously low readings. And that suggests corporate non-compliance as a means of saving expenses, like from fixing the separator system or from disposing of unpurified bilge at a reception facility. Thus, a juror could reasonably infer that the chief engineer failed to maintain an accurate oil record book and falsified record entries at least in part to serve the ship's owner and operator. *See United States v. Oceanic Illsabe Ltd.*, 889 F.3d 178, 194–98 (4th Cir. 2018) (finding sufficient evidence to hold a ship's corporate owner and operator vicariously liable for the chief engineer's failure to maintain an oil record book).

Similarly, for the obstruction-of-justice and false-statements charges, a juror could reasonably infer that the chief engineer acted in part to benefit the ship's owner and operator. The chief engineer may well have been seeking to prevent discovery of his own wrongdoing. But that does not rule out the reasonable inference that he was doing so at

4

least in part to serve corporate interests, such as avoiding compliance costs, *see, e.g.*, *United States v. Ionia Mgmt. S.A.*, 555 F.3d 303, 309 (2d Cir. 2009) (per curiam), or passing inspections required to offload the *Evridiki*'s cargo, *see, e.g.*, *Oceanic Illsabe*, 889 F.3d at 197–98. Thus, even if the chief engineer sought to cover up his own misconduct, he still could have acted, at least in part, to serve corporate interests, and such an inference by a jury does not "fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

Because the evidence would allow a rational juror to find beyond a reasonable doubt that the chief engineer was motivated at least in part to serve the interests of the vessel's owner and operator, the District Court did not err in denying the corporate defendants' motion for acquittal.

## B. The District Court Did Not Err in Imposing the Fines.

The corporate defendants raise two separate challenges to the fines imposed by the District Court. First, the ship's operator, Liquimar, contends that the District Court, in setting the amount of its fine, erroneously considered evidence that was not relevant conduct: falsifying oil-content-meter calibration certificates and dumping contaminated bilge into the ocean. Second, both corporate defendants argue that the District Court inadequately assessed their ability to pay the fines. Neither of those challenges succeeds.

In remonstrating that the falsified certificates and the dumped bilge should not be considered in setting the fine, Liquimar relies on the definition of "relevant conduct" provided in U.S.S.G. § 1B1.3. *See Abrogar*, 459 F.3d at 435–36. But the applicable Guideline for imposing fines on these corporate defendants directs courts to apply "the provisions of 18 U.S.C. §§ 3553 and 3572." U.S.S.G. § 8C2.10; *see also United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc) (explaining that appellate courts

5

review the procedural reasonableness of a sentence for abuse of discretion). And those statutes require consideration of many factors, such as the "nature and circumstances of the offense" and the "history and characteristics of the defendant." 18 U.S.C. § 3553(a); *see also id.* § 3661. Against that statutory backdrop, the District Court did not abuse its discretion by considering evidence that Liquimar's shoreside management falsified multiple oil content meter certificates. Similarly, evidence suggesting that the bilge was shunted away from the meter and dumped into the ocean relates to the circumstances of the record-keeping and obstruction offenses.

Next, both Evridiki and Liquimar argue that in imposing fines under 18 U.S.C. § 3572, the District Court inadequately considered their ability to pay. However, as criminal defendants, Evridiki and Liquimar bear the burden of establishing an inability to pay. *See United States v. Nathan*, 188 F.3d 190, 213 (3d Cir. 1999) ("The sentencing court must take account of the corporate defendant's financial resources, putting the burden on the defendant to produce relevant materials, before setting a fine that may consume all of the defendant's assets."); *see also United States v. Torres*, 209 F.3d 308, 312–14 (3d Cir. 2000). Evridiki and Liquimar attempt to meet that burden based on their current cash flows, which they assert do not allow installment payments of their fines of $2 million and $1 million, respectively. But current cash flow is not the only consideration in an ability-to-pay determination as additional financial resources "shall" also be considered, including future earning capacity. 18 U.S.C. § 3572(a); *see also United States v. Seale*, 20 F.3d 1279, 1284 (3d Cir. 1998) ("Future earning capacity is obviously an appropriate factor to consider."). And the District Court neither legally erred in considering more than current cash flows nor clearly erred in finding facts regarding those additional financial resources. *See Seale*, 20 F.3d at 1284–87. For

6

Evridiki, although it has recently operated at a loss, the District Court found that it could borrow against its equity, including retained earnings exceeding $13 million as of December 31, 2021. For Liquimar, despite its operating "without any appreciable profit," the District Court found that it could generate the revenue to make installment payments on the fine by raising the management fees it charges shipowners. JA2212–13 (Sentencing Hearing Tr. 205:5–206:5).[2] Thus, the District Court "has created enough of a factual record that it is clear that it considered [the defendants'] ability to pay." *Seale*, 20 F.3d at 1284. Based on these adequate findings, which were not clearly erroneous, the corporate defendants did not satisfy their burden of proving their inability to pay. *See Torres*, 209 F.3d at 312–14; *Seale*, 20 F.3d at 1284–87; *cf. Oceanic Illsabe*, 889 F.3d at 200–02 (rejecting excessive fine contention of ship's corporate owner and operator).

\* \* \*

For the foregoing reasons, the judgments and sentences of the District Court will be affirmed.

---

[2] Such a pass-through approach does not always establish an ability to pay, but here without additional evidence, such as price elasticity in the relevant market, from Liquimar – which bears the burden of proving its *inability* to pay – the District Court did not clearly err in this factual finding.