

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2001

# United States v. Kadonsky

Precedential or Non-Precedential:

Docket 00-5120

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"United States v. Kadonsky" (2001). *2001 Decisions.* Paper 46.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/46

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 9, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 00-5120

UNITED STATES OF AMERICA

v.

STEVEN J. KADONSKY,
Appellant

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Crim. Action No. 97-cr-00154)
District Judge: Honorable Garrett E. Br own, Jr.

Argued October 26, 2000

BEFORE: McKEE, RENDELL and STAPLETON,
Circuit Judges

(Opinion Filed March 9, 2001)

George S. Leone
Michael Martinez
Maggie L. Hughey (Argued)
Office of the United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102
 Attorneys for Appellee

        Joshua Markowitz
        Howard A. Teichman (Argued)
        Markowitz & Zindler
        3131 Princeton Pike, Building 3D
        Lawrenceville, NJ 08648
         Attorneys for Appellant

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Defendant Steven J. Kadonsky appeals from the imposition of a $40,000 fine subsequent to pleading guilty to violating 31 U.S.C. S 5324(a)(3) (structuring money transactions in order to avoid statutory r eporting requirements).

Kadonsky tendered evidence to the Probation Office and the Court tending to show that he was unable to pay, and not likely to become able to pay, a fine in any significant amount. This evidence indicated that Kadonsky alr eady owed the State of New Jersey $515,000 in unpaidfines. Over Kadonsky's objection, the District Court imposed a $40,000 fine based on the fact that he had two suits pending against the government in which the claims totaled $527,715. The Court did so without evaluating these claims and, accordingly, without making a deter mination as to whether it was more likely than not that Kadonsky would become able to pay the fine. Instead, the Court indicated that if it turned out that Kadonsky did not ultimately realize sufficient funds in this litigation to pay the fine, he could always return to court and secur e a reduction of the fine.

We exercise plenary review with r espect to issues of law, including the issue of the legal sufficiency of a District Court's findings of fact. United States v. Mobley, 956 F.2d 450, 451-52 (3d Cir. 1992); Gover nment of the Virgin Islands v. Davis, 43 F.3d 41, 44 (3d Cir . 1994). In the event legally adequate findings of fact are made r egarding a defendant's ability to pay a fine, we review those findings for clear error. United States v. Seale, 20 F.3d 1279, 1284 (3d Cir. 1994). We will reverse and remand for resentencing.

2

I.

Kadonsky's difficulties stem from his involvement in a nationwide marijuana network which he headed for mor e than four years. Kadonsky was convicted in a New Jersey state court of being the leader of this narcotics organization. As a result, he is curr ently serving a sentence of life imprisonment with a twenty-five year period of parole ineligibility. He was also ordered to pay a fine of $500,000 and $5000 in penalties. Kadonsky owes an additional $10,000 fine in New Jersey stemming from a different conviction. Both of Kadonsky's New Jersey fines were imposed prior to his sentencing in the instant case.

Subsequent to the New Jersey state proceedings, Kadonsky entered a guilty plea in the United States District Court for the District of New Jersey to one count of structuring monetary transactions by causing mor e than $200,000 to be deposited in amounts of less than $10,000, in violation of 31 U.S.C. S 5324(a)(3) and 18 U.S.C. S 2. Kadonsky was sentenced to twenty-four months in prison to run concurrently with the state prison sentence. As Kadonsky's federal imprisonment will end long befor e his state sentence, the federal sentence is effectively irrelevant to him. However, the District Court also imposed a fine of $40,000, and it is this fine which motivates Kadonsky's appeal.

II.

The PSR concluded that Kadonsky could not pay afine and was unlikely to become able to pay one. The government, however, sent a sentencing memorandum to the Court asking that a fine of $250,000 be imposed. While acknowledging that Kadonsky had no other assets, the government pointed to two lawsuits that he hadfiled against the government: "the Texas Lawsuit" and "the Utah Lawsuit." The government provided the Court with the following information concerning those lawsuits:

> The lawsuits . . . are suits which seek the return of money that was forfeited to the Government as being the proceeds of drug transactions. In the T exas Lawsuit, the defendant, in the first cause of action,

admits that he transferred $125,000.00 to an undercover agent in return for marihuana. Defendant also admits, in the second cause of action, that he instructed another individual to transport approximately $50,000.00 from the New Y ork area to Texas to purchase additional marihuana. After he was arrested, the defendant informed authorities that the second individual was transporting money to T exas to purchase marihuana and the authorities appr ehended this individual and seized the $50,893.00 he was carrying.

  In the third cause of action seeking r eturn of forfeited money, the defendant alleges that he informed an Assistant U.S. Attorney of the wher eabouts of a substantial amount of money in the Dallas ar ea. Undoubtedly, the defendant did this under the auspices of cooperating with authorities. The way it worked was that the defendant claimed that he was aware of other drug dealers' activities and sometimes would learn where they kept money or drugs. The defendant would then put some of his own money or drugs in a self storage unit and inform the authorities of its whereabouts, claiming that it belonged to these "other" drug dealers. Through this scheme, the defendant attempted to, in effect, "buy" a motion for leniency at his sentencing. . . . In the Texas Lawsuit, the Defendant seeks the return of $225,893.00 claiming that he was not given notice of the for feiture.

* * *

  In the Utah lawsuit, the defendant, pursuant to his then cooperative efforts, informed agents of the U.S. Customs Service that property had been pur chased in Park City, Utah with the proceeds of drug distribution activity. When the property was sold for appr oximately $300,000.00, the Government forfeited the proceeds. After the money was forfeited by the Gover nment, Kadonsky claims to have "found out" that the property was actually his and that perhaps it was not drug money that was used to purchase the property. Kadonsky was not given notice of the forfeitur e and now claims, as he does in the Texas Lawsuit, that the

4

forfeited money -- approximately $300,000.00 -- should be returned to him. Thus, the defendant, Kadonsky, is presently seeking in these two civil suits, approximately $650,000.00. Were he to prevail in one or both lawsuits, he would be well able to pay afine of $250,000.00.

Appellee's Supp. App. at 67, 68 (footnote omitted).

The District Court was advised at the sentencing hearing that the court in the Texas Lawsuit had granted summary judgment in the government's favor, but that Kadonsky had filed an appeal. At that hearing, Kadonsky characterized the prospects of his winning the Utah Lawsuit as not "very promising." The District Court ultimately imposed a $40,000 fine. It explained its decision as follows:

Now, as to the fine, I have said that based upon the assets declared by the Defendant, these lawsuits, it appears that he has the ability to pay the fine if the position he's taken these -- in these lawsuits is sustained. It may well not be. If it is not, he can certainly petition the Court for relief fr om all or part of the fine after and if he loses these lawsuits at the trial and Appellate level and there's a final judgment against his position.

Appellant's App. at 52.

Two weeks later, the United States District Court for the District of Utah granted summary judgment to the government relying in part on Kadonsky's concession that he had told the government that the Park City property had been purchased using Weinthal's "drug money." Shortly after that defeat, Kadonsky reported it to the District Court in this case in a motion to vacate the $40,000 fine. The motion was denied. Six months later, Kadonsky lost his appeal from the Texas summary judgment.

III.

U.S.S.G. S 5E1.2(a) provides that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." As the Guideline text indicates, the defendant

5

has the burden of coming forward with evidence from which the Court could find it more likely than not that any fine would remain unpaid. The defendant "may meet that burden by an independent showing or by r eference to the PSR." United States v. Kassar, 47 F .3d 562, 567 (2d Cir. 1995). If the defendant comes forward with such evidence, the Court may not impose a fine without makingfindings concerning the defendant's ability to pay it. United States v. Seale, 20 F.3d 1279, 1284 (3d Cir . 1994). The burden of persuasion is on the defendant to show that an inability to pay will be more likely than not. United States v. Torres, 209 F.3d 308, 313 (3d Cir. 2000).

Where a sentencing court looks to the possibility of future income to satisfy the contemplated fine, it is crucial that the court take carefully into account the risk that such income will not in fact be realized. As we explained in Seale, where the District Court had r elied upon the prospect of royalties from the futur e publication of a book, careful analysis is mandated because curr ent federal law provides the defendant with no opportunity to seek an adjustment of the fine in the event the futur e income is not received. The cautionary counsel that we gave in Seale remains appropriate:

> We note that careful, deliberate analysis on the district court's part--concerning both its determination of a future, hypothetical ability to pay afine and the precise amount of the fine imposed--is crucial today, since the amendment of 18 U.S.C. S 3573 in 1987. Previously, section 3573 permitted a defendant to petition the court to remit or modify a fine upon demonstrating that he or she had made a good faith effort to comply and that changed circumstances had rendered the fine unwarranted. . . . Under the present statutory scheme, this right no longer exists. Rather, current section 3573 permits only the government to petition for modification or remission of afine, and only upon the basis of administrative efficacy.
>
> The present statutory scheme severely hampers the court's ability to leave itself a safety valve.

Seale, 20 F.3d at 1286 n.8.

6

At the sentencing hearing, Kadonsky insisted that he could not pay a fine and was highly unlikely to become able to pay one. He pointed to the net worth statement he had provided to the Probation Office and to the PSR. The government's sole response was to point to the Texas and Utah Lawsuits. Accordingly, the sole issue for the District Court was whether the reliable information before it indicated that Kadonsky would more likely than not be unable to pay a $40,000 fine.

We hold that the District Court committed two related errors of law. First, it erred in concluding that Kadonsky could come back and have a $40,000 fine reduced in the event the two lawsuits did not produce sufficient funds to pay both the New Jersey and federal fine. As we indicated in Seale, this remedy is not available to him.

As a result of this first erroneous legal conclusion, the District Court found no occasion to evaluate -- or , as the Court put it, "handicap" -- the claims asserted in the two lawsuits. This, too, was an error of law. While it is, of course, true that some uncertainty necessarily attends placing a value or range of values on claims asserted in litigation, this is not a task that is foreign to district judges, and it is an essential prerequisite in situations of this kind to a factual finding on the issue of whether the defendant is likely to be able to pay the fine the Court is considering. Because the District Court believed that its fine would be subject to adjustment at any time, it accepted the face value of the claims without considering the infor mation before it bearing on the likelihood of Kadonsky's success. On remand, the District Court must consider that information and make a finding as to whether it is more likely than not that Kadonsky will be unable to pay any contemplated fine.

IV.

The judgment of the District Court will be r eversed, and this matter will be remanded to the District Court for resentencing only.

7

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit