**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-3154
_____

UNITED STATES OF AMERICA

v.

ALQUINTON DEVON MCNEIL, a/k/a Cue

Alquinton Devon McNeil,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 5-11-cr-00604-001)
District Judge:  Honorable James Knoll Gardner

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 17, 2014

_____


Before:  CHAGARES, GREENAWAY, JR., and VANASKIE, Circuit Judges.

(Filed: March 24, 2014)

_____

OPINION
_____

CHAGARES, Circuit Judge.

Alquinton McNeil pleaded guilty to various narcotics and firearms charges and was sentenced to fifty-seven months of imprisonment, six years of supervised release, and, relevant to this appeal, a $1000 fine. He now appeals, challenging the imposition of the fine and further arguing that the District Court abused its discretion in denying his presentencing motion for new counsel. For the following reasons, we will affirm.

I.

We write solely for the parties and will therefore recount only those facts that are essential to our disposition. On December 5, 2012, McNeil entered an open guilty plea to an indictment that charged him with: (1) distributing cocaine base within 1000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 860(a); (2) distributing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (3) selling a firearm to a known felon in violation of 18 U.S.C. §§ 922(d)(1) and 924(a)(2); (4) being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and (5) possessing and selling a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). The Probation Office's Presentence Investigation Report ("PSR") assigned McNeil a total offense level of nineteen and a criminal history category of five, yielding an advisory Sentencing Guidelines range of fifty-seven to seventy-one months of imprisonment. The PSR also indicated that, based on McNeil's total offense level, he was subject to a fine in the range of $6000 to $2,000,000. See 21 U.S.C. § 841(b)(1)(C); United States Sentencing Guideline ("U.S.S.G.") § 5E1.2(c)(3), (4). Finding that McNeil had more than $11,500 in confirmed liabilities and no assets or legitimate income, the PSR

2

concluded that McNeil was unable to pay a within-Guidelines fine and recommended that any fine imposed be minimal.

Neither the Government nor defense counsel filed objections to the PSR. McNeil lodged several objections to the PSR's criminal history section in a pro se letter to the court dated March 17, 2013, and, in April 25 and June 15, 2013 letters, he further moved to withdraw his guilty plea and for substitute counsel at sentencing.[1] McNeil's request for new counsel was premised on his contention that his appointed counsel had rendered ineffective assistance by, inter alia, being unprepared for McNeil's preliminary arraignment and failing to file "any omnibus pretrial motions." Appendix ("App.") 134 (quotation marks omitted). In response, McNeil's counsel described his relationship with McNeil as "tenuous" and observed that McNeil did not appear to trust his advice. App. 133 (quotation marks omitted). Nevertheless, counsel expressed his willingness to continue to represent McNeil through his sentencing.

At McNeil's sentencing hearing, which was held on June 24, 2013, McNeil reasserted his request for new counsel. The District Court orally denied McNeil's motion, finding that the motion was untimely and comprised "mere conclusionary allegations" regarding counsel's ineffectiveness. See App. 155–60. After the court ruled on McNeil's motion for substitute counsel, McNeil withdrew his objections to the PSR as well as his motion to withdraw his guilty plea. App. 161–65. After considering the

---

[1] McNeil's pro se letters to the District Court, and counsel's response thereto, are not in the record. Both parties discuss the contents of the letters by reference to McNeil's sentencing hearing, at which the court summarized and quoted the documents. See, e.g., McNeil Br. 6, 14–15; Gov't Br. 5–6. We will do the same.

factors set forth in 18 U.S.C. § 3553, the court imposed a within-Guidelines sentence of fifty-seven months of imprisonment on Counts One, Three, Four, and Five, to be served concurrently, plus a six-year term of supervised release and a $400 special assessment.[2] The court also imposed a no-interest fine in the total amount of $1000, to be paid in monthly installments of $12.50 during McNeil's term of imprisonment and $50 during his term of supervised release, "until the balance is paid in full or supervision is over, whichever comes first." App. 196. McNeil timely appealed.

## II.[3]

McNeil first argues that his Sixth Amendment rights were violated by the District Court's denial of his motion for substitute counsel before sentencing. We review a district court's refusal to substitute counsel for abuse of discretion. United States v. Gibbs, 190 F.3d 188, 207 n.10 (3d Cir. 1999); United States v. Goldberg, 67 F.3d 1092, 1098 (3d Cir. 1995).

The Sixth Amendment guarantees indigent defendants the right to appointed counsel, but that right is "not without limit and cannot be the justification for . . . manipulation of the appointment system." Fischetti v. Johnson, 384 F.3d 140, 145 (3d Cir. 2004). To warrant a last-minute substitution of counsel, a defendant must demonstrate "good cause," such as "a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his attorney." United States v. Welty,

---

[2] No sentence was imposed on Count Two because it was a lesser-included offense of Count One. See United States v. Jackson, 443 F.3d 293, 301 (3d Cir. 2006).
[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

674 F.2d 185, 188 (3d Cir. 1982). Disagreement over legal strategy does not constitute good cause. Gibbs, 190 F.3d at 207 n.10; Goldberg, 67 F.3d at 1098. If the district court denies the request and the defendant decides to proceed with unwanted counsel, we will not find a Sixth Amendment violation unless: (1) the district court's good cause determination was "clearly erroneous," or (2) the district court made no inquiry into the reasons underlying the defendant's request. Goldberg, 67 F.3d at 1098.

McNeil concedes that the District Court inquired into the reason for his request to substitute counsel. He contends, however, that the inquiry was insufficient because the court failed to "explore" fully the "nature and status" of his relationship with his counsel and instead "devoted the bulk of its inquiry to examining [counsel's] conduct and finding it to be satisfactory." McNeil Br. 9, 15–17 (citing United States v. Gonzalez-Lopez, 548 U.S. 140, 148 (2006) (distinguishing the right to counsel of choice — which is the "right to a particular lawyer regardless of comparative effectiveness" — with the right to effective counsel — which "imposes a baseline requirement of competence on whatever lawyer is chosen or appointed")).

"It is settled that a district court may not deny a substitution motion simply because the court thinks current counsel's representation is adequate." United States v. Musa, 220 F.3d 1096, 1102 (9th Cir. 2000) (emphasis added) (quotation marks omitted). After all, "[e]ven if a defendant's counsel is competent, a serious breakdown in communication can result in an inadequate defense." Id. While explaining its denial of McNeil's motion, the District Court at times conflated the effective assistance and good-cause inquiries. See, e.g., App. 159 ("You're entitled to an effective attorney . . . and

5

nothing more and nothing less."); App. 159–60 ("Because [counsel is not] ineffective, the law doesn't give you the right nor me the power to fire [him] and hire another attorney at taxpayers' expense to represent you."). Our inquiry does not end here, however. As previously discussed, we will affirm the court's denial of McNeil's motion for new counsel so long as the court independently and correctly determined that McNeil failed to show good cause for the motion. Goldberg, 67 F.3d at 1098. We conclude that it did.

The District Court began McNeil's sentencing hearing by summarizing McNeil's pro se requests for new counsel and counsel's response thereto. App. 132-36. The court then addressed McNeil directly:

> THE COURT: Now, Mr. McNeil, has defense counsel correctly advised me that you are still pursuing the complaints and the requests made in your three letters to me?
> THE DEFENDANT: Yes.
> THE COURT: All right. Now, is there anything else other than what you contained in the three letters that you want to say to me in support of your requests for a new lawyer, or did you cover it all in your letters to me?
> THE DEFENDANT: Yes, there was still some more stuff in the PSR —
> THE COURT: Okay.
> THE DEFENDANT: — that I wanted to point out.
> THE COURT: All right. Well, okay, I'll — if I — if I obtain new counsel for you, if I agree with your request for new counsel, then the new counsel will handle any objections you have to the presentence report.
> THE DEFENDANT: Yes.
> THE COURT: . . . . But in terms of your request for a new lawyer, is there anything else that you'd like to say to me in support of that, other than what you've written in the second and third letter[s] to me, the two letters that dealt with his alleged ineffectiveness?
> THE DEFENDANT: No.

App. 137–38 (emphases added).

Finally, the court asked defense counsel to respond to McNeil's allegations. Counsel acknowledged that he and McNeil "had some tense moments in [their]

6

relationship[]" but stated that he was able to "move forward here and represent [McNeil] today here at sentencing and feel as though he got as good a representation as he could have gotten from the get-go and walk out of here feeling that way." App. 140. Based on the foregoing testimony, the court concluded that McNeil had failed to show a "complete breakdown in communication" or "any irreconcilable conflict" between him and his counsel. App. 155.

The District Court inquired into McNeil's reasons for seeking new counsel and, upon doing so, found that McNeil failed to show good cause for his request. Because McNeil expressed only disagreement with his counsel's legal strategies, this determination was not clearly erroneous. Gibbs, 190 F.3d at 207 n.10; Goldberg, 67 F.3d at 1098. The District Court therefore did not abuse its discretion in denying McNeil's motion for substitute counsel.[4]

## III.

McNeil also contends that the District Court erroneously imposed a $1000 fine. "Where, as here, a defendant did not at sentencing raise the issue of his or her inability to pay, a sentencing court's decision to impose a fine and the amount of the fine is reviewed for plain error." United States v. Torres, 209 F.3d 308, 313 (3d Cir. 2000).

---

[4] McNeil also challenges the court's decision to inquire about the status of his relationship with counsel in open court, which McNeil alleges "exacerbated" the conflict between him and counsel. McNeil Br. 9, 18–20. There is no general requirement that hearings on motions for new counsel be held ex parte and, contrary to McNeil's position, no reason why an ex parte hearing was necessary in this case. Cf. United States v. Gonzalez, 113 F.3d 1026, 1029 (9th Cir. 1997) (district court abused its discretion by inviting defense counsel to undermine his client's veracity in open court, leaving the defendant "to fend for himself," without representation by counsel (quotation marks omitted)).

The advisory Sentencing Guidelines provide that, "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). A defendant seeking to avoid paying a fine "has the burden of coming forward with evidence from which the [district court] could find it more likely than not that any fine would remain unpaid." United States v. Kadonsky, 242 F.3d 516, 520 (3d Cir. 2001). Once the defendant proffers such evidence, the district court "may not impose a fine without making findings concerning the defendant's ability to pay it." Id. The sentencing court must consider an array of factors, including: (1) the defendant's income, earning capacity, and financial resources, and (2) the burden of the fine on the defendant and his dependents relative to the burden that alternative punishments would impose. 18 U.S.C. § 3572(a)(1), (2); U.S.S.G. § 5E1.2(d). "The amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive." U.S.S.G. § 5E1.2(d) (emphasis added).

McNeil principally argues that the District Court failed to consider adequately his ability to pay the fine imposed. We disagree. At McNeil's sentencing hearing, the court accepted the PSR's recommendation that McNeil was unable to pay a within-Guidelines fine of $6000 to $2,000,000. It nevertheless found that imposition of a "modest" fine was appropriate, both to punish McNeil for his involvement in gun and drug trafficking and to ensure McNeil's eligibility for the Federal Bureau of Prisons' Inmate Financial Responsibility Plan ("IFRP"). The court specifically opined that McNeil's participation in the prison work program for the duration of his sentence would enable McNeil to

8

reduce significantly the fine amount and to save remaining funds for commissary purchases. App. 207. More importantly, the court observed that McNeil would acquire training and experience that would facilitate his obtaining legitimate employment upon his release. App. 207.

The facts set forth in the PSR, which the court adopted, support its conclusion. McNeil was thirty-seven years old at the time of sentencing. PSR ¶ 52. He has a ninth-grade education, and he earned a high-school degree by passing the General Educational Development ("GED") examination as a student in the Oneonta, New York Job Corps program. PSR ¶ 66. From the mid-1990s to the mid-2000s, he reportedly held short-term positions at various restaurants — including McDonald's, Taco Bell, and Olive Garden — in Easton and Fogelsville, Pennsylvania. PSR ¶ 69. Between 2008 and 2012, McNeil received under-the-table income from work as a bouncer at clubs in Allentown and Bethlehem, Pennsylvania. PSR ¶ 68. He is in good health, with no mental or emotional problems or treatment for the same. PSR ¶¶ 59, 62. In light of these skills and characteristics — which will be supplemented by the training acquired through his participation in the IFRP — McNeil has not shown that he will be unable to repay the balance of the fine in $50 monthly installments over a period of six years.

In summary, the District Court considered McNeil's financial situation and imposed a fine commensurate with its assessment. The unchallenged facts in the PSR support the court's decision. Accordingly, the court did not err, let alone plainly err, in

9

imposing the below-Guidelines fine.[5]

## IV.

For the foregoing reasons, we will affirm the judgment of sentence.

---

[5] McNeil also argues that the court failed to address the effect of the fine on his dependents. For substantially the same reasons discussed above, this argument is not persuasive.