NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3690
_____

UNITED STATES OF AMERICA

v.

CHRISTIAN KOWALKO,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-11-cr-00248-009
District Judge: The Honorable Paul S. Diamond

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 12, 2014

Before: McKEE, *Chief Judge,* SMITH, and SHWARTZ, *Circuit Judges*

(Filed: December 11, 2014)

_____

OPINION*
_____

SMITH, *Circuit Judge.*

Following a jury trial in the United States District Court for the Eastern

District of Pennsylvania, Christian Kowalko was convicted of conspiracy to

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

distribute anabolic steroids, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(E) and possession of anabolic steroids with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(E). On appeal, Kowalko challenges the sufficiency of the evidence underlying both convictions and the District Court's imposition of a $15,000 fine. For the reasons that follow, we will affirm the judgment of the District Court.

## I.

In late 2010 and early 2011, the Drug Enforcement Agency ("DEA") was immersed in an investigation of Keith Gidelson, whom it suspected of distributing anabolic steroids and human growth hormones. From January to April 2011, DEA agents utilized a court-authorized wiretap on Gidelson's cellular telephone and recorded, *inter alia*, 94 telephone call or text message communications between Gidelson and Kowalko. These communications revealed that Kowalko had purchased anabolic steroids, such as testosterone, and other substances, such as human growth hormone and clenbuterol, from Gidelson on a regular basis. They also made clear that Kowalko redistributed the testosterone he purchased from Gidelson to other customers. During a call initiated by Kowalko on March 18, 2011, he asked Gidelson if he could purchase testosterone, insulin-like growth factor ("IGF"), and clenbuterol. Gidelson responded that the drugs were available and instructed Kowalko to pick them up at his residence some time before 7:00

2

pm.  Shortly before 7:00 pm, video surveillance recorded Kowalko entering Gidelson's residence and exiting approximately 25 minutes later carrying a blue plastic bag.

On October 24, 2012, a grand jury in the Eastern District of Pennsylvania returned a two-count second superseding indictment charging Kowalko with conspiracy to distribute anabolic steroids, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(E), and possession of anabolic steroids with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(E).  Kowalko pled not guilty and proceeded to trial on December 4, 2012.  At trial, the Government played for the jury 11 phone conversations between Kowalko and Gidelson, including the March 18, 2011 conversation initiated by Kowalko, and the two video clips showing Kowalko entering Gidelson's residence and exiting with a blue plastic bag.  On December 7, 2012, the jury found Kowalko guilty of both charges.  Thereafter, the District Court sentenced Kowalko to 48 months' imprisonment and imposed a $15,000 fine.[1]  Kowalko's counsel did not object to the fine, and in fact stated that he "d[id not] have a problem with the fine."  J.A. 469.  This timely appeal followed.

---

[1]  Although the Presentence Report ("PSR") recommended a Guidelines range of 100-125 months' imprisonment, the District Court granted Kowalko's motion for a downward departure on the grounds that the "career offender" designation overstated his criminal history, resulting in a new advisory range of 92-115 months.  The District Court then varied downwards from this range for a final sentence of 48 months' imprisonment. The $15,000 fine fell on the lower end of the Guidelines range of $10,000 to $1,000,000.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). "In reviewing a jury verdict for sufficiency of the evidence, we must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Benjamin*, 711 F.3d 371, 376 (3d Cir.), *cert. denied*, 134 S. Ct. 309 (2013) (internal quotation marks and citation omitted). "We review the court's findings as to whether the defendant was able to pay a fine, as well as its determination of the amount of any fine, for clear error." *United States v. Seale*, 20 F.3d 1279, 1284 (3d Cir. 1994) (citing *United States v. Demes*, 941 F.2d 220, 223–24 (3d Cir. 1991)).

## III.

On appeal, Kowalko argues that the Government failed to produce sufficient evidence to support his convictions and that the District Court erred by failing to consider his ability to pay the $15,000 fine it ultimately imposed. For the reasons that follow, we reject each of these arguments.

First, the Government introduced evidence from which a reasonable jury could have found Kowalko guilty of possessing with the intent to distribute anabolic steroids beyond a reasonable doubt. Numerous recorded phone

4

conversations revealed that Kowalko regularly purchased testosterone from Gidelson and redistributed it to other customers. Further, based on the evidence presented, the jury could have reasonably concluded that on March 18, 2011, Kowalko successfully purchased all three drugs that he ordered, including testosterone.

As part of Kowalko's sufficiency challenge, he also argues that the jury may have been confused as to whether the other substances he purchased on March 18, 2011, were anabolic steroids. We are not persuaded. The Government's expert witness never represented to the jury that IGF or clenbuterol are anabolic steroids, even though when he did refer to anabolic steroids—such as testosterone, Sustosterone, Equipoise, Trenbolone Acetate, Masterone, or Anadrol—he explicitly identified them as such. Further, during closing arguments the prosecutor told the jury, in no uncertain terms, that IGF is *not* an anabolic steroid. J.A. 217.

We also reject Kowalko's sufficiency challenge to his conviction for conspiracy to distribute steroids. At the outset, Kowalko concedes that he failed to raise this claim in the District Court and, accordingly, that we review it on appeal for plain error. *Johnson v. United States*, 520 U.S. 461, 465–66 (1997).

We hold that the District Court did not err, much less plainly err, in concluding that a reasonable jury could have found Kowalko guilty of conspiracy

to distribute steroids. The Government introduced evidence that Kowalko repeatedly purchased anabolic steroids from Gidelson, and that the two discussed, *inter alia*, (1) Gidelson's acquisition of anabolic steroids from his supplier; (2) the relative quality of different brands of anabolic steroids; and (3) the price Kowalko charged his customers for steroids he purchased from Gidelson. This evidence was sufficient to support the jury's conclusion that Kowalko and Gidelson shared a common goal and purpose of distributing anabolic steroids and agreed to work together toward that end. *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008).

Lastly, we reject Kowalko's argument that the District Court erred by imposing a $15,000 fine without adequately considering his ability to pay. Assuming, *arguendo*, that this argument has been properly preserved, Kowalko bore the burden of coming forward with evidence of his inability pay. *See United States v. Kadonsky*, 242 F.3d 516, 520 (3d Cir. 2001). He failed to offer any such evidence. Indeed, at the sentencing hearing, Kowalko stated that he "d[id not] have a problem with the fine." J.A. 469. Additionally, although the PSR ultimately concluded that Kowalko would have difficulty paying a fine within the Guidelines range, the Report also indicated that Kowalko was able to find consistent work as a bouncer, which allowed him to earn approximately $200 per night. Additionally, the District Court heard testimony at sentencing indicating

that Kowalko would be able to find work upon release. Given this information, the District Court's selection of a fine on the lower end of the Guidelines range and imposition of a fairly modest $200 per month payment obligation following release from prison evinced an implicit recognition that Kowalko's employment prospects were limited, but not non-existent.

Accordingly, we will affirm the judgment of the District Court.